42 P.3d 698

Lawrence J. KING, Plaintiff, and Freda French, Plaintiff–Appellant,

v.

Mr. & Mrs. Al LANG, Mr. & Mrs. Edwin Knapp, Pete Montemayer, and Frank Sbicca, Real Estate Agents with Jack Hatch Real Estate Company, Jack Hatch Real Estate Company, and Does 1–15, Defendants–Respondents.

No. 25052.

Supreme Court of Idaho, Coeur d'Alene, October 2001 Term.

Feb. 26, 2002.

W.R. Van Camp, Spokane, Washington, for appellant. Dustin Deissner argued.

Montgomery Law Firm, Colville, Washington, for respondents Langs. Chris Montgomery argued.

Michael L. Haman, Quane Smith, Coeur d'Alene, Idaho, for respondents Jack Hatch Realty, Montemayer, and Sbicca.

Theodore L. Rupp, Coeur d'Alene, Idaho, for respondents Knapps.

SCHROEDER, Justice.

Freda French (French) appeals the district court's order granting summary judgment in favor of all of the respondents concerning the interpretation of an easement through a parcel of property and dismissing her claims of fraud, unjust enrichment, and breach of the easement agreement. French appeared *pro se* in the district court and in bringing the appeal. She defined the issues and briefed those issues before this Court. Counsel appeared to argue the case.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

On March 25, 1960, Albert Lang (now deceased) and Minnie Lang (Langs) and Edward Waggoner and Laura Waggoner (Waggoners) entered into an agreement that granted the Waggoners an easement over the Langs' land in order to give them access to the Spokane River. The easement provided in relevant part:

> NOW, THEREFORE, in consideration of the exchange of mutual promises between the grantors [Waggoners] and the grantees [Langs], *the grantors do hereby grant an easement to the grantees, their heirs and assigns, for road purposes for ingress and egress,* over a strip of land 14 feet in width across the following described real property:

> SE¼ of NE¼ and E½ of SE¼ of Section Eight (8), Township 50, North Range 5, W.B.M.

> [. . . .]

As partial consideration for the aforesaid easement, *the grantees [Langs] grant the grantors [Waggoners] and their immediate families the right to use the road across the grantees' property described above,* to reach the Spokane River for the purpose of fishing on the banks thereof.

[Emphasis added.]

In 1984 Edwin and Darlene Knapp (Knapps), the successors in interest to the Waggoners, executed an agreement with the Langs which relocated the Langs' road easement but which left the other terms of the 1960 agreement unchanged. Darlene Knapp is the daughter of the Waggoners and had acquired the property from her parents. Darlene Knapp is therefore the "immediate family" of the Waggoners. Minnie Lang and her son currently own the Lang property as joint tenants with rights of survivorship.

On August 23, 1993, the Knapps entered into a one-year real estate listing agreement with Pete Montemayer, a real estate agent with Jack Hatch Realty. In November of 1993 Keith and Leah Oxford (Oxfords) offered to purchase the property. Frank Sbicca, who was also a real estate agent for Jack Hatch Realty, represented the Oxfords. This offer was contingent on the Oxfords being able to sell their own property. The Oxfords were unable to close because they were having trouble selling their property and obtaining financing.

At some point French became interested in purchasing the property for purposes of a residential development. On April 29, 1994, Montemayer informed Mary Ann Holmes, a real estate agent who represented French and Lawrence J. King (King is not part of this appeal but was a plaintiff in the proceedings below), that the Oxfords would be unable to close on the property. Holmes informed French that the Oxfords could not close. French visited the property and made an offer to purchase. The Knapps were not willing to release the Oxfords from the sales agreement and were not willing to accept French's offer.

French then agreed to a three-way transaction in which the Oxfords would purchase the property from the Knapps in exchange for a warranty deed and would immediately quitclaim the property to French. Montemayer was to receive a commission as the listing agent, Sbicca was to receive no commission, and Holmes would receive a commission as the selling agent. This transaction was closed on May 3, 1994. At the time of the transaction between the Oxfords and French, the Knapps had already left the title company where the transaction occurred.

French received a copy of the property title report and copies of the 1960 and 1984 easement agreement at the closing. She reviewed the documents with Holmes. According to French, Montemayer and Sbicca made representations that she would have access to the Spokane River by virtue of the easement agreements. The Property Condition Report, completed by the Knapps, shows an "X" placed in the "yes" column to the question "Does the property have a recorded easement or access to a county or public road?" French believed that she had access to the Spokane River from her property.

In April of 1996 French visited the property and discovered a gate and several 'No Trespassing' signs that restricted her access to the Spokane River. The Langs had placed these signs on the property. French filed a complaint seeking a declaratory judgment that she held an appurtenant easement over the Langs' property, and alleged claims for breach of the easement, fraud, unjust enrichment, civil conspiracy to defraud, violation of the Idaho Consumer Protection Act, and violation of the "statute of frauds."

The Langs and the realtors moved for summary judgment. The district court ultimately granted summary judgment in favor of all defendants on all issues. French appeals these rulings.

## II.

### STANDARD OF REVIEW

In an appeal from an order granting summary judgment, this Court's standard of review is the same standard used by the district court in ruling on a motion for summary judgment. *Crea v. FMC Corp.,* 135 Idaho 175, 177, 16 P.3d 272, 274 (2000). Summary judgment is appropriate only when

the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Id. Generally, when considering a motion for summary judgment, this Court "liberally construes the record in a light most favorable to the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor." *Brooks v. Logan,* 130 Idaho 574, 576, 944 P.2d 709, 711 (1997).

## III.

## THE DISTRICT COURT PROPERLY DETERMINED THAT FRENCH DID NOT POSSESS AN EASEMENT OVER THE LANGS' LAND

French claims that the 1960 easement agreement gives her an appurtenant easement over the Langs' property. The district court held that the 1960 easement agreement was unambiguous and gave the Langs an appurtenant easement over the property but merely gave the Waggoners an easement in gross to cross the Langs' property for purposes of fishing on the Spokane River. An easement in gross benefits a particular person or persons and not a particular piece of land. If properly defined as an easement in gross, the right in question in this case was personal to the Waggoners and their immediate families. Consequently, the right did not attach to the land and was not assignable.

The difference between an appurtenant easement and an easement in gross is set forth in *Nelson v. Johnson,* 106 Idaho 385, 387, 679 P.2d 662, 664 (1984):

The primary distinction between an easement in gross and an easement appurtenant is that in the latter there is, and in the former there is not, a dominant estate to which the easement is attached. *West v. Smith,* 95 Idaho 550, 511 P.2d 1326 (1973). An easement in gross is merely a personal interest in land of another, *id.,* whereas an easement appurtenant is an interest which is annexed to the possession of the dominant tenement and passes with it. [citation omitted.] An appurtenant easement must bear some relation to the use of the dominant estate and is incapable of existence separate from it; any attempted severance from the dominant estate must fail. [citation omitted.]

French argues that the language of the easement agreement creates an appurtenant easement in her favor or, at the very least, is ambiguous and therefore a jury question.

The section of the easement agreement that is in dispute states the following:

As partial consideration for the aforesaid easement, *the grantees [Langs] grant the grantors [Waggoners] and their immediate families the right to use the road across the grantees' property described above,* to reach the Spokane River for the purpose of fishing on the banks thereof.

[Emphasis added.]

The district court held that this language unambiguously created an easement in gross that was not transferred to French.

The opinion of the district court is correct. The first easement, which was granted to the Langs, clearly identified a dominant estate and a servient estate and identified the location of the easement. Further, the Lang easement was granted to the Langs and their "heirs and assigns," rather than specifically to the Lang family. In contrast, the easement granted to the Waggoners identified no dominant or servient estate, and gave a right of access to the river to people who may have no interest in the land itself, such as members of the Waggoners' immediate family. The district court properly determined that French acquired no easement to cross the Lang property.

## IV.

## THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE RESPONDENTS ON THE CLAIMS OF BREACH OF CONTRACT, VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, AND UNJUST ENRICHMENT

French claims that the transaction created a 'quasi-contract' between the parties that

required all parties to be truthful to one another. Further, she argues that the respondents were unjustly enriched as a result of the transaction and that equity requires that the respondents not be allowed to retain the benefits of the transaction.

### A. Breach Of Contract And Violation Of The Covenant Of Good Faith And Fair Dealing

■ French alleges that the realtors breached a contract and violated the implied covenant of good faith and fair dealing. She admits, however, that she did not have a contract with the Knapps, and therefore could not have one with the realtors who are parties to this action. The realtor who represented her is not a party to this action. The district court dismissed this claim on these grounds.

■ French's only contract was with the Oxfords, who are not parties to this lawsuit. Because there was no contract with French, the respondents could not have breached one. Further, there must be a contract in order for the covenant of good faith and fair dealing to apply. Since there was no contract with the respondents, there can be no violation of the implied covenant.

### B. Unjust Enrichment

■ French argues that her relationship with the parties gives rise to a quasi-contract and that the respondents have been unjustly enriched as a result of this transaction. This Court has held that:

> in order to establish the prima facie case for unjust enrichment, the plaintiff must show that there was: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff of the value thereof.

*Aberdeen–Springfield Canal Co. v. Peiper*, 133 Idaho 82, 88, 982 P.2d 917, 923 (1999) (citing *Curtis v. Becker*, 130 Idaho 378, 382, 941 P.2d 350, 354 (Ct.App.1997)).

The district court held that it would not be inequitable for the respondents to retain any benefits conferred upon them because French was represented by a real estate agent during the transaction at issue and French could not show that she justifiably relied on any alleged misrepresentations made during the transaction.

The only respondent that arguably retained a benefit from French in this case is Montemayer. Sbicca did not receive a commission from the sale, and the money received by the Knapps was from the sale to the Oxfords. The Langs have not been unjustly enriched; they were never a party to this transaction and had no contact with French until they erected the gate over their property.

■ The benefit that Montemayer arguably retained was the commission that he received as a result of the sale. The question is whether it is equitable to allow him to keep his commission. The district court's reasoning is persuasive—all parties to this transaction were represented by real estate agents, and all parties were given the opportunity to examine the easement documents. The record indicates that French's decision to purchase the property was based in large part on her examination of the documents. There is no indication that any party had unequal bargaining power or that the transaction was inherently unfair.

### V.

### THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT ON THE ISSUE OF INTENTIONAL MISREPRESENTATION/FRAUD

■ French states that during closing, Montemayer, Sbicca, and the Knapps represented to her that she would have river access because of the easement agreement. The elements of fraud are well established. In order to prevail on a fraud claim, a plaintiff must show: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the

falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *Carl H. Christensen Family Trust v. Christensen*, 133 Idaho 866, 872, 993 P.2d 1197, 1203 (1999).

 The district court held that, even if intentional misrepresentations were made by the realtors, French could not prove the element of justifiable reliance because she was afforded the opportunity to inspect the easement agreements prior to closing. Although the issue of justifiable reliance is generally a question of fact, *Perkins v. Thorpe*, 106 Idaho 138, 142, 676 P.2d 52, 56 (Ct.App.1984), in *Faw v. Greenwood*, 101 Idaho 387, 389, 613 P.2d 1338, 1340 (1980), this Court has stated that "when a purchaser is given the opportunity to conduct an independent investigation of the records and does so, it is generally held that he is not entitled to rely on misrepresentations of the seller" (citations omitted). Based on this language, the district court granted the defendants' motion for summary judgment, stating the following:

> In this case, I find the only reasonable conclusion is that King and French did foreclose any actual reliance upon Montemeyers's representations based on their examination of the easement agreement prior to closing. . . . Based on this analysis, I conclude there are no inferences that can be drawn in King's and French's favor that they can show reliance on Montemeyer's representation (or Sbicca's omission). Because reasonable minds could not differ, I grant the defendants motion for summary judgment and dismiss the plaintiff's claims for intentional misrepresentation /fraud.

The record indicates that French read over the easement agreement and was afforded the opportunity to inspect it. French admitted in her verified complaint that:

12. French and King's subsequent examination of these written easements indicate they provided a reciprocal easement across the Langs' land for the Knapps and their successors-in-interest, heirs and assigns, allowing them access to the Spokane River. . . .

19 French and King agreed to pay $60,000 for the Land . . . . In addition, French and King were reassured the reciprocal easements were in effect *because of their own interpretation upon examination of the written easements in question prior to purchase.*

[Emphasis added].

Further, in French's memorandum opposing summary judgment she stated that:

> At the Closing, French, *upon examination of the papers,* was relieved to see that the Spokane River easement was in writing and made a remark regarding the same. Thus, before signing and completion of escrow and delivery of payment, French and King *assured themselves the easement* to the Spokane River was being passed with the Land. . . .

[Emphasis added].

It would be troubling if the realtors either made representations that the easement was in effect or simply said nothing when French stated she was glad to see the easement in writing. However, the element of justifiable reliance is lacking because French examined the easement agreement and interpreted it for herself.

 Regarding the Knapps, the only representation that was made was the Property Condition Report, which stated that there was a "recorded easement or access to a public or county road." There is nothing in the report that indicates that there was an appurtenant easement that provided access to the Spokane River, and in fact there is a recorded easement on the property—the Langs' easement. The Knapps were not present at the closing and could not make any representations to French at that time. There is no evidence that the Knapps made any representation of river access. Summary judgment in favor of the Knapps on this issue was also appropriate.

## VI.

### THE DISTRICT COURT DID NOT ERR IN DISMISSING THIS CASE WITH PREJUDICE UNDER IRCP 56(b)

 French claims that dismissal of a case with prejudice is a drastic remedy that

should be used sparingly. According to French the district court never expressed an opinion that her claim was frivolous or delayed the proceedings, and therefore it was an abuse of discretion for the court to dismiss her claims "with prejudice."

French's claim has no merit. She cites *Kirkham v. 4.60 Acres of Land*, 100 Idaho 781, 784, 605 P.2d 959, 962 (1980), which states that "it is generally recognized that the dismissal of a case 'with prejudice' is a drastic remedy that should be used sparingly" (citations omitted). However, *Kirkham* did not involve dismissal at summary judgment; rather, the case concerned I.R.C.P. 40(c), which at the time concerned involuntary dismissal rather than dismissal at summary judgment. The dismissal of French's case was a dismissal on the merits. It would make no sense for a district court to dismiss all claims at summary judgment and then allow a plaintiff to further pursue those claims. There was no error by the district court in determining that the summary judgment of all of French's claims was a final judgment on the merits and that French could no longer pursue her claims against the defendants.

## VII.

## THE DISTRICT COURT DID NOT ERR BY STRIKING FRENCH'S CLAIM FOR PUNITIVE DAMAGES

■ The district court ordered that French's claim for punitive damages be stricken from the amended complaint because of the effect of Idaho Code § 6–1604(2) which states in relevant part that "[i]n all civil actions in which punitive damages are permitted, no claim for damages shall be filed containing a prayer for relief seeking punitive damages. However, a party may, pursuant to a pretrial motion and after hearing before the court, amend the pleadings to include a prayer for relief seeking punitive damages." I.C. § 6–1604(2).

If a party wishes to seek punitive damages, that party must amend the complaint after a pretrial hearing permitting the amendment. No such proceeding took place. Therefore,

the district court properly ordered that these claims be stricken from French's pleadings.

## VIII.

## THE KNAPPS AND LANGS ARE ENTITLED TO ATTORNEY FEES ON APPEAL

■ The Knapps and Langs both claim entitlement to attorney fees on appeal under I.C. § 12–121 because French's appeal is frivolous and presents no real issues of law.

■ An award of attorney fees on appeal is appropriate "if the law is well-settled and the appellants have made no substantial showing that the district court misapplied the law." *Bowles v. Pro Indiviso, Inc.*, 132 Idaho 371, 377, 973 P.2d 142, 148 (1999) (citations omitted). It is clear that neither the Knapps nor Langs did anything to mislead or harm French. French has presented no theory upon which they could be held liable. The district court ruled on a clear and unambiguous easement agreement and applied the appropriate law.

French has drawn these people into litigation attempting to expand an easement in gross, a personal easement of limited scope for family members, into an appurtenant easement to a planned subdivision for numerous strangers. French's claims are unreasonable, lacking in foundation and frivolous.

## IX.

## CONCLUSION

The decision of the district court is affirmed. Costs are awarded to all respondents. The Knapps and Langs are awarded attorney fees.

Chief Justice TROUT, Justices WALTERS, KIDWELL and EISMANN concur.