## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 36981

| | |
|---|---|
| CHARLES COWARD and ANNE COWARD, husband and wife, | ) ) Lewiston, November 2010 Term |
| Plaintiffs-Appellants, | ) ) 2010 Opinion No. 133 |
| v. | ) ) Filed: December 20, 2010 |
| CRYSTAL HADLEY, an individual, | ) ) Stephen W. Kenyon, Clerk |
| Defendant-Respondent. | ) ) |
| _____ | ) |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Hon. Steve Verby, District Judge.

The judgment by the district court is <u>affirmed</u> in part and <u>reversed</u> in part. This case is remanded to the district court to award reasonable attorneys fees to Respondent. Costs and attorney fees on appeal are awarded to Respondent.

Bistline Law, PLLC, Coeur d'Alene, for Appellant. Arthur M. Bistline argued.

Finney, Finney & Finney, P.A., Sandpoint, for Respondent. John Finney argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

Charles and Anne Coward appeal from the trial court's decision following a bench trial that they do not have either an express or implied easement over an alleyway connecting their home to a public street through the rear of Crystal Hadley's lot. Crystal Hadley cross-appeals the district court's refusal to grant attorney fees below.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This controversy surrounds three neighboring residential lots in the Law's Second Addition in Sandpoint, Idaho. Lot 1, which is owned by Crystal Hadley, Respondent, sits on a corner with Superior Street and Boyer Avenue bordering its north and west sides, respectively.

1

Lot 2, which is owned by a trust controlled by Charles and Anne Coward, lies directly to the south of lot 1 along Boyer Avenue. Lot 11, owned by persons not parties to this case, is the next lot south of lot 2. A twelve-foot-wide strip of land in the rear of lots 1 and 2, along the eastern edge of the properties, was originally used as an alley to access the back of lot 11.

Freeman Daughters, an individual, acquired lots 1, 2, and 11 together in 1907. In 1922, Daughters conveyed lots 1 and 2 to Ole Sleteger. That deed ("the 1922 deed") provided that Daughters and "his heirs and assigns shall have a permanent right of way over and across twelve feet on the east side [of lots 1 and 2] for the purpose of an alley." Daughters later conveyed away lot 11 with a deed noting that a permanent right-of-way existed over the alley on lots 1 and 2 benefiting lot 11.

Both lots 1 and 2 apparently came to be owned simultaneously by Martin and Nellie Mushrow a few years later, and they conveyed the lots separately to different third parties.[1] The deed first conveying away lot 1 to Hadley's predecessor did not reserve any easement rights benefiting lot 2, which is now the Cowards' lot. None of the deeds in either chain of title refer to such a right-of-way either. The easement did continue to benefit lot 11 until 1950, when the owner of lot 11 at that time quitclaimed the easement back to the owners of lots 1 and 2. The next day, Hadley and her now-deceased husband, Irvin, purchased lot 1. After that time, the alley was a grassy area occasionally used by occupants of lot 2 to reach an old garage at the back of the lot.

Mrs. Coward bought lot 2 in 1994, then conveyed it to a trust controlled by her and her husband in 2004.[2] In 2007, the Cowards and Hadley executed an Agreement as to Boundary Line ("boundary agreement") after they discovered that a fence between them intruded into both sides of the property line. The boundary agreement provided that the parties each owned title to their lots unaltered under any legal or equitable theory. Later that year, however, the Cowards

---

[1] Exactly how the Mushrows obtained both lots 1 and 2 is unclear from the record. Plaintiffs' exhibit 6 might be the deed by which they took title to the properties, but it is completely illegible, both in the record on appeal and in the district court. What is clear from the record is that the Mushrows conveyed lot 2 to a third party in 1927. Another deed from several years later then purports to convey both lots 1 and 2 from the Mushrows to Hannah St. Peter. The deed to St. Peter must have contained an error, as subsequent deeds in that chain of title convey only lot 1.

[2] When Mrs. Coward bought lot 2 in 1994, her name was Anne Marie Underwood. She later married Mr. Coward and adopted his last name. The deed by which Mrs. Coward originally took title to lot 2 stated that her property had a twelve-foot city alley.

began using the alley to construct a garage in the rear of their lot, leading to a dispute as to whether they had any easement rights over Hadley's property.

The Cowards filed a complaint against Hadley seeking a declaratory judgment that they had obtained an easement by prescription over Hadley's lot. Five days before trial, the Cowards moved to amend the complaint to add claims for an express easement and an easement by implication, which the trial court granted the day of trial. Hadley also moved at trial to have the prescription claim dismissed, and the court granted the motion from the bench at the end of the trial, finding that there had been only occasional use of the alley over the years and that it was usually permissive. The court later issued a memorandum decision finding in favor of Hadley on the merits of the express- and implied-easement claims as well, but amended the decision in response to motions from both parties. In the amendment, the court withdrew the portions ruling on the merits of the Cowards' easement claims and held instead that the parties' boundary agreement extinguished any interests the Cowards might have in Hadley's lot. The court also refused to award attorney fees to Hadley under I.C. § 12-121, finding that the Cowards had not pursued the action frivolously.

The Cowards appealed and Hadley filed a cross-appeal. The Cowards assert that the 1922 deed reserving an easement for lot 11 also expressly reserved an easement benefiting their lot. Alternatively, they ask the Court to find that the 1922 deed impliedly created an easement in favor of both lots 2 and 11 by identifying the easement as an "alley" in the same way that developers dedicate streets and rights-of-way to public use in a plat. Hadley responds that there was no express easement in the 1922 deed and that there could be no implied easement because the Cowards' lot adjoins a public street and there is no evidence that anyone continuously used the alley before lots 1 and 2 were conveyed to separate buyers. In her cross-appeal, Hadley asks this Court to award fees below under I.C. § 12-121 for defending against the Cowards' unsuccessful claims.

### III. ISSUES ON APPEAL

1.  Whether the Cowards have an express easement over Hadley's lot.
2.  Whether the Cowards have an implied easement over Hadley's lot.
3.  Whether the boundary agreement between the parties terminated any of the Cowards' potential easement rights.
4.  Whether Hadley was entitled to attorney fees in the district court.
5.  Whether Hadley is entitled to attorney fees on appeal.

## IV. STANDARD OF REVIEW

The district court entered its memorandum decision after a bench trial pursuant to I.R.C.P. 52(a).[3] This Court reviews factual findings made after a trial without a jury for clear error. I.R.C.P. 52(a). This Court exercises free review of the district court's conclusions of law. *Carney v. Heinson*, 133 Idaho 275, 278, 985 P.2d 1137, 1140 (1999).

## V. ANALYSIS

**A.    The Cowards Do Not Have an Express Easement over Hadley's Lot**

Before reaching the issue of whether the parties' boundary agreement extinguished an easement over Hadley's lot, it is necessary to determine if there were any easements in the first place. The Cowards do not claim that the Mushrows reserved an easement for their lot when they conveyed lots 1 and 2 to different owners, which was the first and last time ownership to the two lots was severed. Instead, they assert that the 1922 deed conveying lots 1 and 2 from Daughters to Sletegar created an appurtenant express easement over lot 1 benefiting lot 2. The 1922 deed provides:

> "Lots one (1) and two (2) in Block "JJ" [sic] of Law's second addition to Sandpoint, Idaho; provided, however, [Daughters], his heirs and assigns shall have a permanent right of way over and across twelve feet on the east side or end of said lots for the purpose of an alley."

The Cowards, who now own lot 2, believe they are Daughters' distant "heirs and assigns," entitled to use the easement.

"In construing an easement in a particular case, the instrument granting the easement is to be interpreted in connection with the intention of the parties, and the circumstances in existence at the time the easement was granted." *Kolouch v. Kramer*, 120 Idaho 65, 69, 813 P.2d 876, 880 (1991). Unambiguous written documents must be construed by the trial court as a question of law. *Benninger v. Derifield*, 142 Idaho 486, 489, 129 P.3d 1235, 1238 (2006). "If, however, the instrument of conveyance is ambiguous, interpretation of the instrument is a matter of fact for the

---

[3] Idaho Rule of Civil Procedure 52(a) provides in relevant part:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for the purposes of review. Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appear personally before it.

4

trier of fact." *Id.* Determining whether a document is ambiguous is a question of law. *McKay v. Boise Project Bd. of Control*, 141 Idaho 463, 469, 111 P.3d 148, 154 (2005).

Although there are two types of easements, appurtenant and in gross, express easements are presumed to be appurtenant. *Hodgins v. Sales*, 139 Idaho 225, 230, 76 P.3d 969, 974 (2003). An easement appurtenant "is one whose benefits serve a parcel of land. More exactly, it serves the owner of that land in a way that cannot be separated from his rights in the land." *Abbott v. Nampa Sch. Dist. No. 131*, 119 Idaho 544, 550, 808 P.2d 1289, 1295 (1991) (quotation omitted). By contrast, an easement in gross "benefits the holder of the easement personally, without connection to the ownership or use of a specific parcel of land." *Hodgins*, 139 Idaho at 230, 76 P.3d at 974.

Daughters did unambiguously create an easement appurtenant to lot 11 over lots 1 and 2 in the 1922 deed by excepting a right-of-way for his "heirs and assigns." This Court has previously analyzed a deed in which landowners conveyed an easement to their neighbors "their heirs and assigns, for road purposes" over a fourteen-foot-wide strip on their land. *King v. Lang*, 136 Idaho 905, 908, 42 P.3d 698, 701 (2002). The Court held that this language created an unambiguous easement appurtenant to the grantees' parcel because the deed clearly identified the dominant and servient estates and the location of the easement. *Id.* at 908–09, 42 P.3d at 701–02. Similarly, the 1922 deed in this case created an easement appurtenant to lot 11. It conveyed the right to Daughters and his "heirs and assigns" to use a twelve-foot-wide strip on the eastern edge of lots 1 and 2. Thus, any parties assigned ownership of lot 11 thereafter also obtained an appurtenant easement over lots 1 and 2.

The 1922 deed just as unambiguously did not create an easement over lot 1 appurtenant to lot 2. Even though no specific words are necessary to create an express easement, it is necessary that "'the parties make clear their intention to establish a servitude.'" *Capstar Radio Operating Co. v. Lawrence*, 143 Idaho 704, 707, 152 P.3d 575, 578 (2007) (quoting *Benninger*, 142 Idaho at 489, 129 P.3d at 1238). The plain text of the deed mentions nothing about an easement benefiting lot 2, so the document itself provides no basis for an express easement here. *See Simons v. Simons*, 134 Idaho 824, 828, 11 P.3d 20, 24 (2000) (stating that the intention of the parties must be ascertained from the text of an unambiguous deed). Lot 2 is therefore not the dominant estate of an easement over lot 1.

5

The Cowards nonetheless contend that they are Daughters's "assigns" entitled to benefit from the easement, because he owned all three lots when he executed the 1922 deed, and they are his successors in interest to lot 2. The phrase "heirs and assigns," however, creates an appurtenant easement that runs with the dominant estate—not to servient estates. *Johnson v. Gustafson*, 49 Idaho 376, 381, 288 P. 427, 429 (1930); *see also Boydstun Beach Ass'n v. Allen*, 111 Idaho 370, 375–76, 723 P.2d 914, 919–20 (Ct. App. 1986) (holding that an express easement ran with the dominant estate). Moreover, this Court has unequivocally held that "'[u]nless the terms of the servitude . . . provide otherwise, an appurtenant easement or profit may not be used for the benefit of property other than the dominant estate.'" *Christensen v. City of Pocatello*, 142 Idaho 132, 136, 124 P.3d 1008, 1012 (2005) (quoting Restatement (Third) of Property: Servitudes § 4.11 (2000)). An express easement "does not grant rights in the easement to the holders of parcels other than the dominant estate." *Tungsten Holdings, Inc. v. Drake*, 143 Idaho 69, 72, 137 P.3d 456, 459 (2006).

The Cowards do not own the dominant estate, but rather a property identified as a servient estate in the 1922 deed, so they cannot benefit from the easement in this case. Daughters's assignees received only an easement appurtenant to lot 11. This easement was never appurtenant to lots 1 or 2. While the Cowards are Daughters's assigns as to lot 2, neither they nor any of their predecessors ever acquired any interest in an easement over lot 1.

**B.      The Cowards Do Not Have an Implied Easement Over Hadley's Lot**

The Cowards assert on appeal that they have an implied easement allowing them to use the alley over Hadley's lot. Because there is no evidence of necessity, there is no implied easement. Instead, the Cowards use the term "implied easement," to raise what is essentially a public-dedication argument that the 1922 deed dedicated the alley to be used by lots 1 and 2. The dedication claim also fails because dedications must be to the public, not a specific group.

*1.      The Cowards Do Not Have an Implied Easement*

The Cowards do not seem to dispute that they lack an implied easement over Hadley's lot under the common law as it exists now. There are two kinds of implied easements: those implied by prior use and those implied by reasonable necessity. *Bear Island Water Ass'n, Inc. v. Brown*, 125 Idaho 717, 725, 874 P.2d 528, 536 (1994). Both require unity of title or ownership and a subsequent separation by grant of the dominant estate. *Id.* For an easement implied by prior use, there must also be continuous use long enough to show that the use was intended to be

permanent and that the easement was "reasonably necessary" for the enjoyment of the dominant estate at the time of severance. *Akers v. Mortensen*, 147 Idaho 39, 45–46, 205 P.3d 1175, 1181–82 (2009); *see also Thomas v. Madsen*, 142 Idaho 635, 638, 132 P.3d 392, 395 (2006) (describing the elements of this claim). To prove an easement implied by necessity, the claimant must show even more: "necessity of the easement at the time of severance" as well as "great present necessity for the easement." *Bear Island Water Ass'n*, 125 Idaho at 725, 874 P.2d at 536. Thus, both implied-easement claims require that the easement was at least reasonably necessary for the beneficial use of the dominant estate at the time of severance.

There is no evidence in the record whatsoever about whether the alley was reasonably necessary for the enjoyment of lot 2 at the time the Mushrows sold lots 1 and 2 to different owners, severing title. Lot 2 is not a landlocked parcel, but a residential lot that has always abutted Boyer Avenue, a public street. *See Davis v. Peacock*, 133 Idaho 637, 643, 991 P.2d 362, 368 (1999) (finding an implied easement by prior use over a road that formerly provided the only access to a residential lot) *overruled on other grounds by Spokane Structures, Inc. v. Equitable Inv., LLC*, 148 Idaho 616, 226 P.3d 1263 (2010). There was testimony at trial that, at least until recently, there was not even a curb cut allowing a vehicle to enter the alley from Superior Street. The Cowards were also able to install a dirt driveway with a curb cut on Boyer Avenue to access their backyard. There was no reasonable necessity for an implied easement at the time of severance, nor is there now. Thus, the Cowards do not have an implied easement over the alley.

### 2. *The Cowards Cannot Have a Dedicated Easement over Hadley's Lot*

The Cowards contend that the 1922 deed created an unconventional implied easement benefiting their property. Although they admit there is no Idaho case law to support their position, they ask the Court to adopt a new implied-easement theory akin to a public dedication. Citing a number of public-dedication cases from Idaho and elsewhere, they argue that reserving an easement "for the purpose of an alley" in the 1922 deed served the same function as dedicating an alley to public use in a recorded subdivision plat. Like a public dedication, a "private" dedication would create a permanent right-of-way accessible to all the properties abutting the alley, not just the dominant estate in the deed.[4]

---

[4] Ordinarily, the Cowards' dedication claim would be waived because they did not properly raise it below. A claim for relief must be pled in the complaint. *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, ---, 235 P.3d 387, 393–94 (2010); *see also* I.R.C.P. 8(a)(1) (describing general rules of pleading). The Cowards' Amended Complaint only states claims for a prescriptive easement, an implied easement, and an express easement. They admit in their

7

There can be no private dedication to a restricted class of individuals, such as those only owning property abutting an alley. The rule that a common-law dedication must be for public use has always been a part of Idaho jurisprudence. "The essential elements of a common law dedication of land are (1) an offer by the owner, clearly and unequivocally indicated by his words or acts evidencing his intention to dedicate the land to a *public* use, and (2) an acceptance of the offer by the *public*." *Worley Highway Dist. v. Yacht Club of Coeur d'Alene, Ltd.*, 116 Idaho 219, 225, 775 P.2d 111, 117 (1989) (emphases added) (quoting *Pullin v. Victor*, 103 Idaho 879, 881, 655 P.2d 86, 88 (Ct. App. 1982)); *see also Simmons v. Perkins*, 63 Idaho 136, 143, 118 P.2d 740, 743 (1941) (considering whether there had been a public dedication to a city). It is true that a landowner can complete a public dedication by selling lots referencing a recorded plat that shows public alleys and streets. *Saddlehorn Ranch Landowner's, Inc. v. Dyer*, 146 Idaho 747, 750–51, 203 P.3d 677, 680–81 (2009). The dedication, however, is not simply to the properties abutting the private way but is for public access and administration. *Boise City v. Hon*, 14 Idaho 272, 278, 94 P. 167, 168 (1908).

Requiring the dedication to be to the public, and not to individuals or to a class of private grantees, is a widely accepted principle:

> The essence of a dedication is that it is for the use of the public at large. There may be a dedication for special uses, but it must be for the benefit of the public. There can be no dedication to private uses or for a purpose bearing an interest or profit in the land . . . .

23 Am. Jur. 2d *Dedication* § 5 (2010) (citations omitted); *accord Burnham v. Davis Islands, Inc.*, 87 So. 2d 97, 100 (Fla. 1956); *Marksbury v. State*, 322 N.W.2d 281, 285 (Iowa 1982); *Marks v. Bettendorf's, Inc.*, 337 S.W.2d 585, 593 (Mo. 1960); *Knudsen v. Patton*, 611 P.2d 1354, 1360 (Wash. Ct. App. 1980); 26 C.J.S. *Dedication* § 8 (2010) ("There can be no dedication to private uses, or to uses public in their nature but the enjoyment of which is restricted to a limited part of the public."). Thus, whenever a plat or deed attempts to dedicate land to a group that includes less than the general public, the dedication fails. *See Mingledorff v. Crum*, 388 So. 2d 632, 633–35 (Fla. Ct. App. 1980) (rejecting a dedication that would enable only family members of people buried on private land to also be buried there in the future); *Wagon Wheel Landowners Ass'n v.*

---

Reply brief that they did not make this dedication claim until their closing brief after trial. Nonetheless, the record does not show that Hadley objected to the Cowards raising this claim after trial, so the district court was able to consider this theory.

8

*Wallace*, 838 P.2d 361, 364 (Kan. Ct. App. 1992) (rejecting a dedication of a road only for a subdivision's members and guests).

Accordingly, the Cowards could have no dedicated easement over Hadley's lot. The proper way to acquire an easement is to resort to existing legal and equitable theories.

**C.      The Court Does Not Reach the Issue of Whether the Cowards Waived Their Easement Claims in the Boundary Agreement**

The district court held that the boundary agreement between the parties foreclosed any easement claims the Cowards had over Hadley's lot. Because this Court determines that the Cowards possessed no rights to an easement in the first place, it need not reach the issue of whether they waived those claims in the boundary agreement. "[T]he appellate court may affirm the trial court on a theory not relied upon below." *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, ---, 224 P.3d 458, 464 (2008).

**D.      Hadley Is Entitled to Attorney Fees Below Under I.C. § 12-121**

The Cowards request attorney fees under I.C. § 12-121 for the action below. The district court declined to award fees because previous owners had occasionally traversed Hadley's lot to access an old garage, leading the Cowards to reasonably believe they had a prescriptive easement there.

Idaho Code § 12-121 allows the courts the discretion to award fees to the prevailing party in a civil action.[5] "The entire course of the litigation must be taken into account and if there is at least one legitimate issue presented, attorney fees may not be awarded even though the losing party has asserted other factual or legal claims that are frivolous, unreasonable, or without foundation." *Michalk v. Michalk*, 148 Idaho 224, ---, 220 P.3d 580, 591 (2009). Fees under I.C. § 12-121 are not awarded as a matter of right but are subject to the trial court's discretion. *Nampa Charter Sch., Inc. v. DeLaPaz*, 140 Idaho 23, 29, 89 P.3d 863, 869 (2004). Even though the decision is discretionary, "it must be supported by findings and those findings, in turn, must be supported by the record." *Wait v. Leavell Cattle, Inc.*, 136 Idaho 792, 799, 41 P.3d 220, 227

---

[5] This provision provides:

> In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees. The term "party" or "parties" is defined to include any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

I.C. § 12-121

(2001). This Court determines: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the court acted within the outer bounds of its discretion and the applicable legal standards; and (3) whether the court reached its decision by an exercise of reason. *Brinkmeyer v. Brinkmeyer*, 135 Idaho 596, 599, 21 P.3d 918, 921 (2001).

Hadley defended against three easement claims in this case: (1) prescriptive easement; (2) express easement; and (3) implied easement. None of these claims was legitimate. The Cowards presented virtually no evidence to support their prescriptive claim at trial. They called three witnesses, including Hadley, none of whom testified to any continuous use in support of a prescriptive-easement claim. The district court consequently granted Hadley's motion to dismiss that claim from the bench at the end of trial. There was an old garage in the back of the Cowards' property facing the alley that might have at first caused them to believe an easement existed, but it does not justify bringing an action against Hadley if an investigation turns up no substantial evidence to support any kind of easement claim. *See Camp v. E. Fork Ditch Co.*, 137 Idaho 850, 856 n.1, 55 P.3d 304, 310 n.1 (2002) (stating that a prescription claimant must show "open, notorious, continuous, and uninterrupted use, under a claim of right and with the knowledge of the owner of the servient tenement" for the prescriptive period).

The other easement claims were equally without a foundation. Nothing in the Cowards' chain of title suggested that their estate benefits from an express easement. The Cowards also did not attempt to advance a conventional implied-easement claim at trial or in their closing argument. Further, they admit that they did not raise their dedication claim until after trial, and simply labeled it an implied-easement claim. Although they suggest a new theory of Idaho law, they cite nothing but contrary public-dedication cases without articulating why those decisions would allow a private dedication in this dispute. *See Partout v. Harper*, 145 Idaho 683, 689, 183 P.3d 771, 777 (2008) (affirming a fee award where a party's position on a purportedly unsettled legal issue was against the clear weight of Idaho law); *cf. Thomas v. Madsen*, 142 Idaho 635, 639, 132 P.3d 392, 396 (2006) (reversing a fee award where some novel legal defenses were not frivolous).

In short, the Cowards at no point alleged any reasonable grounds for relief against Hadley, so the district court exceeded the boundaries of its discretion when it refused to award fees. *See Kiebert v. Goss*, 144 Idaho 225, 228–29, 159 P.3d 862, 865–66 (2007) (awarding fees where plaintiffs below had made no showing on any of their claims in a quiet-title action).

10

**E.      Hadley Is Entitled to Attorney Fees on Appeal Under I.C. § 12-121**

Attorney fees are available on appeal under I.C. § 12-121 if the appeal was brought frivolously, unreasonably, or without foundation. *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006). This decision is discretionary with the appellate court. *McDaniel v. Inland Nw. Renal Care Group-Idaho, LLC*, 144 Idaho 219, 224–25, 159 P.3d 856, 861–62 (2007). For the same reasons set forth in the section above, the Cowards brought this appeal unreasonably. Hadley is entitled to fees on appeal.[6]

## VI. CONCLUSION

Hadley's lot is not subject to any easement in favor of the Cowards' lot. The deeds in the Cowards' chain of title do not convey an express easement, and the Cowards clearly provided insufficient evidence to establish a prescriptive or implied easement. The district court's judgment is affirmed in part and reversed in part. The case is remanded to the district court to enter an award of reasonable attorney fees in favor of Respondent. Costs and attorney fees on appeal are awarded to Respondent.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON **CONCUR.**

---

[6] Hadley also requests attorney fees on appeal under I.C. § 12-123, which allows fee awards as sanctions for "frivolous conduct" in civil actions. I.C. § 12-123(1), (2). This section, however, does not provide for attorney fees on appeal. *Spencer v. Jameson*, 147 Idaho 497, 507, 211 P.3d 106, 116 (2009).