# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36410

| | | |
|---|---|---|
| INDEPENDENT SCHOOL DISTRICT OF BOISE CITY, | ) | |
| | ) | |
| Plaintiff-Counterdefendant, | ) | |
| | ) | **Boise, January 2011 Term** |
| v. | ) | |
| | ) | **2011 Opinion No. 36** |
| HARRIS FAMILY LIMITED PARTNERSHIP, an Idaho limited partnership, | ) | **Filed: March 18, 2011** |
| | ) | |
| | ) | **Stephen Kenyon, Clerk** |
| Defendant-Counterclaimant. | ) | |
| -------------------------------------------------------- | ) | |
| HARRIS FAMILY LIMITED PARTNERSHIP, an Idaho limited partnership, | ) | |
| | ) | |
| Third Party Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIGHTON INVESTMENT LLC, an Idaho limited liability company | ) | |
| | ) | |
| Third Party Defendant-Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STATE OF IDAHO, by and through the STATE BOARD OF EDUCATION acting as BOARD OF TRUSTEES OF BOISE STATE UNIVERSITY, | ) | |
| | ) | |
| Third Party Defendant. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Ronald J. Wilper, District Judge.

The district court orders dismissing the claims for breach of contract and breach of the implied duty of good faith and fair dealing and granting summary judgment on the unjust enrichment claim are <u>affirmed</u>.

1

Greener Burke Shoemaker, P.A., Boise, for appellant.  Richard Greener argued.

Givens Pursley, LLP, Boise, for respondent.   David R. Lombardi argued.

_____

HORTON, Justice

Brighton Investments, LLC (Brighton) purchased real property from the Harris Family Limited Partnership (Harris).  The parties' purchase and sale agreement contained restrictive covenants that ran with the land and limited the uses of the property.  Several months later, Brighton conveyed a portion of the real property to Boise State University (BSU), thereby realizing a considerable profit.  Brighton knew that BSU intended to swap it for property belonging to the Boise Independent School District (School District) and that the School District then intended to construct new junior high facilities thereon, in contravention of the restrictive covenants.

After the School District received title to the property, Harris and the School District stipulated to the School District's condemnation of the restrictive covenants, and the School District constructed the junior high school.  Harris brought third party claims against Brighton, including breach of contract, breach of implied duty of good faith and fair dealing, and unjust enrichment.  Pursuant to Idaho Rules of Civil Procedure 12(b)(6) and 12(g)(2), the district court granted Brighton's motion to dismiss the claims for breach of contract and breach of the implied duty of good faith and fair dealing.  It later granted Brighton's motion for summary judgment on the unjust enrichment claim.  Harris timely appealed.  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Harris owns hundreds of acres of real property in east Boise that are part of its comprehensive development, commonly known as the Harris Ranch project.  On December 31, 2005, pursuant to a purchase and sale agreement, Harris sold Brighton approximately forty-four acres of land for $100,000 per acre.  The parties also entered into and recorded a memorandum of agreement.  The two documents contained virtually identical "post-closing obligations" (the Restrictive Covenants or the Covenants) that stated in relevant part that 1) the Restrictive Covenants were expressly intended to survive closing and "protect and enhance the value of the Property and adjacent properties;" 2) the property Harris retained and the property Brighton purchased were subject to existing governmental approvals; and 3) both parties would submit

2

both initial and final development plans, consistent with nearby developments and existing governmental approvals, to one another for approval. The purchase and sale agreement also provided that in any action arising from a breach of the agreement, the prevailing party was entitled to costs and reasonable attorney fees.

Around the time of the Harris-Brighton transaction, BSU wished to acquire from the School District the property where the former East Junior High School was located in order to permit future development of an athletic complex. The School District and BSU developed a plan under which BSU would acquire land in the vicinity of the Harris Ranch project upon which a new junior high school would be constructed. BSU would then transfer that land to the School District in exchange for the former East Junior High campus. BSU and the School District identified a suitable twenty-acre parcel owned by Harris and began negotiations. Harris offered the parcel for approximately $5.0 million. However, Harris conditioned the sale on Boise City's approval of Harris' comprehensive development, apparently for the purpose of obtaining the School District's support of the Harris Ranch development. BSU and the School District could not guarantee the City's approval of the project, and ended negotiations with Harris in October 2006 because the School District was running out of time to complete construction of the new junior high school.

After the School District ended negotiations with Harris, its broker identified several other properties suitable for the junior high school, including the property Brighton had acquired from Harris. The School District and BSU approached Brighton about the availability of that property. Brighton agreed to work with the School District and BSU after it was assured that their negotiations with Harris were at a complete end. The parties entered into negotiations to convey to BSU 21.54 acres (the Property) of the forty-four acres Brighton had purchased from Harris. In a November 27, 2006 email, Brighton informed BSU and the School District that, pursuant to the Restrictive Covenants, "the [P]roperty was anticipated to be residential development . . . " and development plans would require Harris' approval. The School District attempted to gain that approval, but Harris rejected its efforts. In early May 2007, Brighton conveyed the Property to BSU. The Property was appraised at $6,100,000. BSU paid a purchase price of $3,500,000, and Brighton was credited with a charitable donation for the difference between the purchase price and the appraised value of the Property.

3

On May 14, 2007, the School District exercised its power of eminent domain to condemn the Restrictive Covenants, pursuant to I.C. § 7-701. On July 20, 2007, Harris filed a third party complaint against Brighton, alleging breach of contract and breach of the implied duty of good faith and fair dealing. In essence, Harris claimed that Brighton's conveyance to BSU "with the prior knowledge and intent" that the Property would eventually be used by the School District for a non-residential use was a breach of the Restrictive Covenants, and that Brighton was unjustly enriched when it enjoyed a significant profit on the sale to a public entity, thereby effectively avoiding the Restrictive Covenants. The purchase and sale agreement, the memorandum agreement, and the warranty deed conveying the Property from Harris to Brighton were attached as exhibits to Harris' third party complaint.

Harris and the School District subsequently stipulated that the School District's taking of the Restrictive Covenants was necessary to the School District's legal use of the Property. On July 26, 2007, the district court condemned the Covenants, stating that Harris "reserves and is not waiving any other rights or claims [Harris] has asserted . . . ." Harris and the School District later entered into a mutual release and settlement agreement that valued the Restrictive Covenants at $175,000. The School District paid Harris severance damages in that amount.

On October 11, 2007, Brighton filed a motion to dismiss most of the counts in Harris' third party complaint, pursuant to I.R.C.P. 12(b)(6) and 12(g)(2). The district court dismissed Harris' claims for breach of contract and breach of the implied duty of good faith and fair dealing, stating that "knowledge of a likely breach in the future is not a breach that gives rise to a cause of action," and reasoning that the condemnation action had foreclosed all of Harris' rights to enforce the Restrictive Covenants. The court reasoned that since the purchase and sale agreement did not limit the third parties to whom Brighton could sell the Property and since the Covenants had been condemned and were thus no longer enforceable, Harris had failed to state claims upon which relief could be granted.

Harris filed an amended third party complaint on December 27, 2007, which included an additional claim against Brighton for unjust enrichment. This claim alleged that Harris bestowed a benefit on Brighton when it sold the Property to Brighton for a discounted purchase price because the Property was burdened by the Restrictive Covenants. Brighton filed a motion for summary judgment dismissing that claim on June 13, 2008. An affidavit in support of Harris' opposition to the motion contained an expert appraiser's estimate that the Restrictive Covenants

4

were valued at $2,250,000. Harris claimed that Brighton was unjustly enriched either in that amount or by the increase in the Property's market value that arose between Brighton's purchase and sale. The district court dismissed Harris' unjust enrichment claim, reasoning that the record demonstrated that Harris sold the Property to Brighton for its market value, not at a discounted rate, and therefore Harris had not conferred any benefit upon Brighton.

Harris timely appealed the district court's dismissal of its claims for breach of contract and the implied covenant of good faith and fair dealing and the summary judgment order dismissing its unjust enrichment claim. Both parties seek an award of attorney fees incurred in connection with this appeal.

## II. STANDARD OF REVIEW

The standards for reviewing a district court's dismissal under Idaho Rule of Civil Procedure 12(b)(6) and granting summary judgment are similar but not identical. *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002). As to both, "the non-moving party is entitled to have all inferences . . . viewed in his favor." *Id.* However, a 12(b)(6) motion looks only to the complaint to determine whether the plaintiff has stated a claim for relief. *Id.* Where a claim for relief is stated, the complaint survives the motion to dismiss and the plaintiff is entitled to offer evidence in support of its claim. *Orthman v. Idaho Power Co.*, 126 Idaho 960, 962, 895 P.2d 561, 563 (1995). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

## III. ANALYSIS

### A. The district court properly granted Brighton's 12(b)(6) motion to dismiss Harris' claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

The district court's order dismissing Harris' claims sounding in contract reasoned that "Brighton did not breach its contract because, pursuant to the parties' stipulation, the Court ordered that Harris Ranch no longer owned any right to enforce the restrictive covenants against the school site. Neither the purchase agreement nor its restrictive covenants limited Brighton's right to sell the land to a third party, including a party with condemnation authority. Therefore, Harris Ranch did not state a claim for relief . . ." Harris asserts that the district court's order

5

condemning the Restrictive Covenants did not eliminate Harris' breach of contract claims against Brighton, and thus the court's order granting Brighton's 12(b)(6) motion to dismiss those claims was error.

      *i. Although we infer that the Restrictive Covenants imposed a residential-use restriction, Brighton did not breach that restriction.*

We hold that the district court properly dismissed Harris' claims because Brighton did not breach the Restrictive Covenants.

      *a. For purposes of deciding the 12(b)(6) motion, we accept Harris' allegation that the Restrictive Covenants limited the Property to strictly residential uses.*

In order to state a breach of contract claim capable of surviving a 12(b)(6) motion to dismiss, Harris was required to allege that a contract between itself and Brighton existed, and that while obligated thereby, Brighton engaged in conduct that violated that contract. The parties' briefing on appeal devotes substantial attention to whether the Restrictive Covenants in fact limited the Property to solely residential uses. However, for purposes of deciding a 12(b)(6) motion, "the only facts which a court may properly consider . . . are those appearing in the complaint, supplemented by such facts as the court may properly judicially notice." *Taylor v. McNichols*, 149 Idaho ---, 243 P.3d 642, 649 (2010). Therefore, for our purposes only those facts asserted in Harris' third party complaint are relevant to the analysis. Harris asserted that the parties agreed that the Property "was planned for single family residential development under Governmental Approvals previously obtained, and as part of the overall Harris Ranch Master Plan." Harris also asserted that the Restrictive Covenants required the Property to be developed consistently with existing governmental approvals "which, in pertinent part, limited and restricted the development of the [Property] to single family residences."

Therefore, for purposes of reviewing the district court's dismissal, we assume the parties intended the Covenants to impose a residential-use restriction on the Property.

      *b. No breach occurred while Brighton was burdened by the Restrictive Covenants.*

Harris asserts that Brighton's conveyance to BSU "with the prior knowledge and intent" that the Property would be put to a non-residential use was sufficient to breach the Restrictive Covenants. However, as the district court stated, "knowledge of a likely breach in the future is not a breach that gives rise to a cause of action" – especially if that breach will be committed by

6

a third party. This is demonstrated by the fact that if Harris had attempted to sue Brighton at the time it claims Brighton's breach occurred – the date of Brighton's conveyance to BSU – the Property would not yet have been developed for non-residential use, and thus Harris' claim would have been dismissed as unripe. *See Noh v. Cenarrusa*, 137 Idaho 798, 801, 53 P.3d 1217, 1220 (2002) (the ripeness doctrine "requires a petitioner or plaintiff to prove 1) that the case presents definite and concrete issues, 2) that a real and substantial controversy exists, and 3) that there is a present need for adjudication.").

Brighton's ability and obligation to comply with the Restrictive Covenants terminated when it conveyed its interest in the Property to BSU. The burdens imposed by restrictive covenants run with the land, i.e., they may be enforced against one who purchases real property with notice of the covenants. *Shawver v. Huckleberry Estates, LLC*, 140 Idaho 354, 365, 93 P.3d 685, 696 (2004). Since only a current owner may comply with restrictive covenants, either voluntarily or pursuant to injunction, only a current owner may be liable for their breach. In the present case, the obligation to comply with the Restrictive Covenants ran first to Brighton and subsequently to BSU and then the School District. Brighton did not avoid its obligations under the Restrictive Covenants. It conveyed the Property to a party that took on the burden of the Covenants until they were properly condemned.

> ii. *The district court properly dismissed Harris' implied duty of good faith and fair dealing claim because Brighton was not bound by the Restrictive Covenants when the Covenants were condemned.*

Although breach of contract and breach of the implied duty of good faith and fair dealing claims each consist of distinct elements, the district court did not engage in a separate analysis of Harris' claim for breach of the implied duty of good faith and fair dealing. Nonetheless, the court's dismissal was proper. The duty of good faith and fair dealing is implied in every contract. *Luzar v. Western Sur. Co.*, 107 Idaho 693, 696, 692 P.2d 337, 340 (1984). It "is an objective determination of whether the parties have acted in good faith in terms of enforcing the contractual provisions." *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 243, 108 P.3d 380, 390 (2005). "An action by one party that violates, qualifies or significantly impairs any benefit or right of the other party . . . violates the covenant." *Id*.

With respect to the Property, Brighton's conduct while bound by the Restrictive Covenants did not violate, qualify, or significantly impair Harris' interest in the Covenants, and

therefore the district court's dismissal was proper. The Restrictive Covenants, and Harris' ability to enforce them by injunction, remained in force until the Covenants were condemned by order of the district court. Even if the School District's condemnation violated, qualified, or significantly impaired the Covenants, such occurred after title to the Property vested in the School District. Therefore, Brighton was no longer bound by the Covenants or liable for post-conveyance breach of the implied duty of good faith and fair dealing.

**B. The district court properly granted summary judgment on Harris' unjust enrichment claim because Harris did not confer any benefit to Brighton when it sold the Property to Brighton.**

Harris contends that Brighton was unjustly enriched, either in the amount of the difference between Brighton's purchase and sale price or the appraised value of the Restrictive Covenants, because Brighton purchased the Property when its market value was diminished by the Restrictive Covenants[1] but sold it to BSU virtually free of the Restrictive Covenants. Brighton responds that Harris has no claim in unjust enrichment because Harris did not confer any benefit upon Brighton that it was inequitable for Brighton to retain, and also because Harris' $175,000 severance award was an adequate remedy at law. The district court held that Harris sold the Property to Brighton at its market value, not at a rate discounted because of the burden of the Restrictive Covenants, and that Harris therefore failed to prove that it conferred any benefit upon Brighton.

"The measure of damages in a claim of unjust enrichment is the value of the benefit bestowed upon the defendant which, in equity, would be unjust to retain without recompense to the plaintiff. The measure of damages is not necessarily the value of the money, labor and materials provided by the plaintiff to the defendant, but the amount of benefit the defendant received which would be unjust for the defendant to retain." *Gillette v. Storm Circle Ranch*, 101 Idaho 663, 666, 619 P.2d 1116, 1119 (1980). In the present case, Harris' unjust enrichment claim does not seek compensation for the value of the Restrictive Covenants, but rather the benefit Brighton enjoyed by allegedly shedding the burden of the Covenants from the Property's market value by transferring the Property to BSU, knowing that BSU intended to transfer the Property to the School District, which had the power of eminent domain. Thus, although Harris

---

[1] On appeal, Harris contends that Brighton got a bargain on the Property because the Restrictive Covenants reduced the market value of the Property. However, this contention is contrary to language in the purchase and sale agreement and in the memorandum of agreement stating that the Restrictive Covenants were agreed to "[i]n order to protect and enhance the value of the Property and adjacent properties . . ."

accepted $175,000 as just compensation from the School District for the value of the Restrictive Covenants, Harris' unjust enrichment claim is predicated upon a different alleged harm.

The prima facie case for unjust enrichment is "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff of the value thereof." *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 88, 982 P.2d 917, 923 (1999) (quoting *Curtis v. Becker*, 130 Idaho 378, 382, 941 P.2d 350, 354 (Ct. App. 1997)). Inequity exists if a transaction is inherently unfair. *King v. Lang*, 136 Idaho 905, 910, 42 P.3d 698, 703 (2002). Yet the doctrine "does not operate to rescue a party from the consequences of a bargain which turns out to be a bad one." *George v. Tanner*, 108 Idaho 40, 43, 696 P.2d 891, 894 (1985).

Harris has not shown that it conferred any benefit upon Brighton which it was inequitable for Brighton to retain. The uncontroverted evidence establishes that Harris sold forty-four acres of undeveloped property to Brighton at its fair market value. The parties' purchase and sale agreement did not place any conditions upon Brighton's ability to divide and resell the property. Indeed, it is evident that an investment company like Brighton was motivated by the prospect of dividing the property and reselling it at a profit. Harris' argument that Brighton's eventual resale of the Property to an entity vested with the power of eminent domain is a benefit conferred and unjustly retained ignores the profit-driven nature of the parties' transaction.

Nothing about Brighton's transaction was inherently unfair. To the contrary, Brighton refused to discuss conveyance of the Property to BSU and the School District until it was assured that their negotiations with Harris were at an end. We are unwilling to accept Harris' premise that a party to a land transaction implicitly agrees not to convey that property to an entity endowed with the power of eminent domain. Since unjust enrichment does not provide compensation simply because one suffers the consequences of his own bad bargain, we find that the district court properly granted Brighton's motion for summary judgment dismissing Harris' unjust enrichment claim.

**C. As the prevailing party, Brighton is entitled to attorney fees and costs pursuant to the purchase and sale agreement.**

Brighton seeks an award of attorney fees incurred on appeal pursuant to the purchase and sale agreement. Section 9.4 of that agreement provides, in pertinent part, as follows:

9

In the event of any controversy, claim or action being filed or instituted between Buyer and Seller to enforce the terms and conditions of this Agreement arising from the breach of any provision hereof, the prevailing party shall be entitled to receive from the other party all costs, damages, and expenses, including reasonable attorney's fees and costs through all levels of action, incurred by the prevailing party.

As Brighton is the prevailing party in this appeal, we award attorney fees incurred in connection with this appeal pursuant to the parties' contract.

## IV. CONCLUSION

We affirm the district court's orders granting Brighton's motions to dismiss and for summary judgment, and award costs and attorney fees to Brighton as the prevailing party.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.