679 P.2d 662

**Lyle NELSON and Loa Nelson, husband and wife, Plaintiffs-Respondents,**

v.

**Raymond H. JOHNSON and Wilma Johnson, husband and wife, Defendants-Appellants.**

**No. 14760.**

Supreme Court of Idaho.

April 6, 1984.

William A. Parsons, of Parsons, Smith, Stone & Fletcher, Burley, for defendants-appellants.

Jon J. Shindurling, James J. May and Jay D. Sudweeks of May, May, Sudweeks, Shindurling & Stubbs, Twin Falls, for plaintiffs-respondents.

HUNTLEY, Justice.

By this appeal we are asked to review the decision of the district court wherein it was determined that two easements in favor of the respondents, Lyle and Loa Nelson, exist. Because the findings of the district court are supported by substantial and competent evidence, we affirm.

In 1956, Robert and Majorie Wake owned certain land in Cassia County. They carried on a dry farming operation on a portion of the land and the rest of the estate was used as a cattle ranch. As part of the cattle ranching operation, each spring and autumn the Wakes would drive their cattle from the home ranch down a county road which bounded the farmland on the west, and then eastward over an access road on the farmland to Butler Springs, also located on the farm. From Butler Springs, the cattle were ranged further eastward onto the adjacent Bureau of Land Management (BLM) property and forest service land, utilizing grazing rights thereon and returning each day to the springs for water. In the summer months, the cattle ranged further up onto forest service land. At the onset of winter they were driven back through Butler Springs, across the access road and down the county road to winter on the home ranch.

On December 28, 1956, the dry farm was sold to Jesse and Maud Hess. The contract of sale contained the following clause:

It is hereby expressly agreed that the sellers hereby reserve and the purchasers agree to give, the right to the use of water in the Butler Springs located in the NW ¼ of the NE ¼ of said Section 15, for the watering of livestock owned by the sellers, together with an easement and right of way from the said springs Eastward across the NE ¼ of the NE ¼ of said Section 15, and the N ½ of the N ½ of said Section 14, generally along the line near the bottom of Butler Spring Hollow. The said right of way and watering place to consist of approximately 40 acres and the sellers to construct and maintain adequate fences along the right of way and surrounding the water trought [sic]. It is agreed that all water not necessary for the watering of the sellers [sic] livestock will be permitted to overflow the water trough and to be used by the purchaser.

The clause defines the Butler Springs area used by the Wakes in the ranching operation, however, it does not describe the access road leading to the springs from the county road.

In 1963, the Hesses sold the farm to Raymond and Wilma Johnson, the appellants herein. The terms of that contract provided that the Johnsons would have uninterrupted possession of the property, "excepting only that permissive use of the premises as is set forth in that certain contract dated the 20th [sic] day of December, 1956, between ROBERT C. WAKE and MARJORIE E. WAKE and the Vendors." The 1956 contract had not been recorded, nor had a deed between the Wakes and Hesses been executed as of 1963; however, the Johnsons had actual notice of the provisions of the Wake-Hess contract. A deed reflecting the terms of the 1956 contract was eventually executed and recorded in 1964.

The Wakes continued the use of the access road, Butler Springs and the federal grazing privileges until they sold the home

ranch and cattle operation in 1964. In the sale contract, the Wakes expressly granted to the new owners, "their rights, to the water of Butler Springs ... consisting of approximately 40 acres which the same was reserved by R.C. Wake and wife, in a Contract for Real Estate with Jean Hess, dated December 26, [sic] 1956." The ranch property and cattle operation were subsequently sold several times. All successors in title to the ranch have utilized the easement in the springs as was reserved in the 1956 contract, as well as the access road leading to the springs from the county road. In 1973, the property was purchased by the Nelsons, the respondents. A corrected warranty deed which included "[r]ight for stock water in Butler Springs located in the NW ¼, NE ¼ of Section 15 and easements on part of Section 15 and 14" was recorded in April of 1979. A second corrected deed containing the same language was recorded in 1981.

The Johnsons have at all times since the purchase from the Hesses in 1964 been the owners of the farmland and Mr. Johnson testified that all owners of the ranch, previous to the Nelsons, had used the easements as a matter of right. Shortly after the Nelsons took possession of the ranch however, the Johnsons purported to grant permission to use the road and Butler Springs to the Nelsons, which "permission" was revoked by a letter sent the Nelsons in 1978. In 1979 the Johnsons placed locks on the gates across the access road.

Access to federal grazing land was subsequently gained by the Nelsons via a circuitous route which required obtaining permission and crossing other private land. The federal grazing land serviced by Butler Springs was not utilized due to its inaccessibility.

The Nelsons filed a complaint in district court alleging that they had easement interests in both the Butler Springs area and the access road. The court ruled for the Nelsons, holding that the easement reserved in the 1956 Wake-Hess contract was appurtenant to the ranch, and that an ease-

ment by prescription had arisen in the access road.

## I  BUTLER SPRINGS EASEMENT

In construing an easement in a particular case, the instrument granting the easement is to be interpreted in connection with the intention of the parties, and the circumstances in existence at the time the easement was granted and utilized. *Quinn v. Stone*, 75 Idaho 243, 270 P.2d 825 (1954). The trial court in this case determined that the easement reserved in the 1956 Wake-Hess contract was appurtenant in nature, with a dominant estate in the cattle ranch and a servient estate in the farm, and that the easement had consequently passed with the dominant estate upon each transfer of title. The evidence fully supports that interpretation. The language of the reservation clause in the contract, as well as the established pattern of use of the Butler Springs area, indicate a clear intention by the parties that the easement be for the benefit of the cattle ranch. There is no showing that the parties intended it to be a mere personal right.

The definitions of "appurtenant" and "in gross" further make it clear that the easement is appurtenant. The primary distinction between an easement in gross and an easement appurtenant is that in the latter there is, and in the former there is not, a dominant estate to which the easement is attached. *West v. Smith*, 95 Idaho 550, 511 P.2d 1326 (1973). An easement in gross is merely a personal interest in the land of another, *id.;* whereas an easement appurtenant is an interest which is annexed to the possession of the dominant tenement and passes with it. 3, Powell on Real Property § 418, at 34–216 (1981). An appurtenant easement must bear some relation to the use of the dominant estate and is incapable of existence separate from it; any attempted severance from the dominant estate must fail. *Id.*, at 34–217. The easement in the Butler Springs area is a beneficial and useful adjunct of the cattle ranch, and it would be of little use apart from the operations of the ranch. Moreover, in case

of doubt, the weight of authority holds that the easement should be presumed appurtenant. 25 Am.Jur.2d *Easements* § 13 at p. 427. Accordingly, the decision of the trial court is affirmed as to the reserved easement.

## II THE ACCESS ROAD EASEMENT

"A prescriptive easement must be established by open notorious use of the servient property with the actual or imputed knowledge thereof by the owner of the servient tenement. The use must be continuous for a prescriptive period of five years and must be done under a claim of right." *Webster v. Magleby,* 98 Idaho 326, 327, 563 P.2d 50, 51 (1977).

The use of the access road was open and known to both the Hesses and the Johnsons. The Nelsons and their predecessors in interest claimed a right of way in the access road, and no permission was given for such use until Johnson purported to do so in 1978. In fact, Mr. Johnson testified at trial that he believed the ranch owners had driven the cattle over the road by right. These facts established a prescriptive use of the road for the period between 1956 and 1978, at a minimum, which clearly meets the five year requirement. The finding of the trial court that a prescriptive easement had been established, being supported by substantial and competent evidence, is affirmed.

Costs to the respondents. No attorney fees awarded.

DONALDSON, C.J., and SHEPARD, BAKES and BISTLINE, JJ., concur.