86 P.3d 484

**MOUNTAINVIEW LANDOWNERS CO-OPERATIVE ASSOCIATION, INC., an Idaho non-profit corporation; Donald N. Nepean and Haleen Nepean, husband and wife, Plaintiffs–Respondents,**

v.

**DR. JAMES COOL, D.D.S. and Synthia Cool, husband and wife, Defendants–Appellants.**

**Dr. James Cool, D.D.S. and Synthia Cool, husband and wife, Counterclaimants–Appellants,**

v.

**Mountainview Landowners Cooperative Association, Inc., an Idaho non-profit corporation, Counterdefendant–Respondent.**

No. 28762.

Supreme Court of Idaho, Coeur d' Alene, Oct. 2003 Term.

Feb. 26, 2004.

Preston, Gates & Ellis, LLP, Coeur d'Alene, for appellants. Joseph T. Reuter argued.

William F. Boyd, Coeur d'Alene, for respondents. William F. Boyd argued.

KIDWELL, Justice.

James and Synthia Cool, (Appellants) husband and wife, appeal the district court's interpretation of the "Use Agreement" which grants Mountain View Landowners Cooperative Association, Inc., (Respondent) an easement to use Appellants' Priest Lake property for swimming and boating, a boat launch, and for parking. The Appellants seek review by this Court regarding the district court's holdings.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The Appellants purchased deeded property on Priest Lake in 1998. The property is located at Lot 1, Block 3, Mountain View Addition, Bonner County, Idaho. The Respondent is an Idaho non-profit corporation acting for and on behalf of all other owners of lots in Blocks 1, 2 and 3 of Mountain View Addition. The Appellants purchased the property from Larry and Barbara Bailey who had previously purchased the property from Pauline and Jack Powers.

Mountain View Addition was originally a single tract of land used for commercial purposes including a store, cabins, boat launch, private sandy beach, etc. The original owner, Ben Noonan, platted the property as Mountain View Addition and sold the lots and cabins to persons, including the Appellants' predecessors in interest, as recreational lake property.

In October 1988, Mountain View Landowners Cooperative Association, Inc. and the Appellants' predecessors in interest, Jack E. Powers and Pauline F. Powers, (Powers) husband and wife, made a certain Private Use Agreement and recorded it with the Bonner County Recorder (hereinafter "Use

Agreement"). The Use Agreement resolved a previous lawsuit between the Respondent and the Powers. The lawsuit was in regard to the Respondent's use of the Powers' road down to the beach and exactly which beach the Respondent could use.

The Use Agreement provided the Respondent with what amounts to an easement for "use of the beach area located north of the existing boat moorage facility for swimming and boating only without any fee or assessment." The Use Agreement also obligated the Appellants, among other obligations, to provide the Respondent with "use of the improved concrete launching area ... [but, the Appellants] may impose a daily launch fee and may provide the alternative of an annual launch fee." Furthermore, the Use Agreement required the Appellants to provide the Respondent the "use of [a] parking area [which is] contingent upon payment of parking fees on a daily or annual basis payable to the [Appellants]."

On June 9, 1999, the Respondent filed suit against the Appellants alleging breach of the Use Agreement and seeking injunctive relief. Beginning on May 9, 2001, the matter was tried before the District Court of the First Judicial District of Idaho, Bonner County. The district court held that the term "swimming" includes picnicking, sunbathing and gatherings for relaxation and social interaction. The district court also defined the area of the Appellants' parking area contained in the Use Agreement and gave the Respondent the option of paying either daily or annual fees for use of the parking area. The Appellants seek review by this Court regarding the district court's holdings.

## II.

## STANDARD OF REVIEW

■ The existence of ambiguity determines the standard of review of a lower court's interpretation of a contract or instrument. *Union Pac. R.R. Co. v. Ethington Family Trust,* 137 Idaho 435, 437–38, 50 P.3d 450, 452–53 (2002). "The initial inquiry into whether a ... legal instrument is ambiguous presents a legal question, over which this court exercises free review." *Chubbuck v.*

*City of Pocatello,* 127 Idaho 198, 201, 899 P.2d 411, 414 (1995); *Union Pac. R.R. Co.,* at 437–38, 50 P.3d at 452–53. "An instrument which is reasonably subject to conflicting interpretation is ambiguous." *Latham v. Garner,* 105 Idaho 854, 858, 673 P.2d 1048, 1052 (1983). "The legal effect of an unambiguous written document must be decided by the trial court as a question of law." *Id.* at 857, 673 P.2d at 1051. "If, however, the instrument of conveyance is ambiguous, interpretation of the instrument is a matter of fact for the trier of fact." *Id.*

"Findings of fact cannot be set aside on appeal unless they are clearly erroneous, i.e., not supported by substantial, competent evidence." *Kohring v. Robertson,* 137 Idaho 94, 99, 44 P.3d 1149, 1154 (2002) (citing *Savage Lateral Ditch Water Users Ass'n v. Pulley,* 125 Idaho 237, 241–42, 869 P.2d 554, 558–59 (1993)). Findings based on substantial although conflicting evidence will not warrant reversal. *Id.* "[T]he trial court's findings of fact will be liberally construed in favor of the judgment entered." *Id.*

## III.

## ANALYSIS

A. **The District Court Was Correct In Relying Upon Extrinsic Evidence To Define:**

1. **"Swimming" In The Use Agreement.**

■ As an initial matter that will apply to all subsequent issues, the Use Agreement should be treated as an easement for the analysis below regarding ambiguity. Prior to the execution of the Use Agreement in 1988, deeds of lots in the Mountain View Addition contained "[a] perpetual easement ... for the use of the beach ... in common with other owners of lots in said Mountain View Addition." The Use Agreement of 1988 does not contain the term "easement." Rather, "[t]his agreement shall be binding upon the parties thereto and their heirs and assigns forever. This agreement has the effect of a covenant to the platted subdivision and the terms and conditions shall be binding upon all lot owners in perpetuity." Thus, the

language "heirs and assigns" of the Use Agreement resembles that of an easement, yet the term covenant is used to describe the agreement. *See King v. Al Lang,* 136 Idaho 905, 909, 42 P.3d 698, 702 (2002). Therefore, the Use Agreement should be treated as an easement because the 1988 Use Agreement: contains language that creates an easement; defines the original easement contained in the pre–1988 deeds; and was entered into as a settlement for a lawsuit pertaining to the original easement.

■ Before extrinsic evidence can be used to interpret the term "swimming" in the Use Agreement, this Court must determine that the Use Agreement, or at least the term "swimming," is ambiguous. *See Chubbuck* at 201, 899 P.2d at 414; *Union Pac. R.R. Co.,* at 437–38, 50 P.3d at 452–53. Extrinsic evidence may be considered to determine the intent of a drafter of an ambiguous document. *Matter of Estate of Kirk,* 127 Idaho 817, 824, 907 P.2d 794, 801 (1995). This Court has free review over determining ambiguity. *Id.* Essentially, swimming is ambiguous if it is "reasonably subject to conflicting interpretations." *Mut. of Enumclaw Life Ins. Co. v. Lincoln,* 130 Idaho 72, 74, 936 P.2d 1314, 1316 (1997).

■ The Appellant argues that "swimming" has a well-settled definition set forth in dictionaries; as such, there is no patent ambiguity. A patent ambiguity "is evident from the face of the instrument." *Estate of Kirk* at 824, 907 P.2d at 801. Yet, the circumstances of this case present a latent ambiguity over the term swimming. "A latent ambiguity is not evident on the face of the instrument alone, but becomes apparent when applying the instrument to the facts as they exist." *Id.*

The Use Agreement states that the "[l]andowners shall have use of the beach area . . . for swimming and boating only." Thus, the beach can be used for swimming, but swimming and its accompanying activities are not defined. Appellants claim swimming is restricted to mean only "to propel oneself through water," according to *Webster II New Riverside Dictionary,* Houghton Mifflin Co., 1984. Adopting the Appellants' strict definition of swimming could lead to illogical results. Parents would be unable to lifeguard their swimming children because they themselves were not "propelling themselves through water." Moreover, such a strict interpretation would preclude those who wish to stand or dangle their feet in the water because they also are not "propelling themselves through water." *Id.*

Furthermore, there may not be a universal unambiguous definition of swimming as claimed by the Appellants. According to Webster's Third New International Dictionary Unabridged, G. & C. Merriam Co., 1967, swimming "is the act, art, or sport of swimming and diving." Thus, according to at least one other source, swimming also includes diving. *Id.* Therefore, more than one definition and interpretation of swimming exists. We hold that swimming is an ambiguous term as used in this context; as such, further analysis below is required.

■ "In construing an easement in a particular case, the instrument granting the easement is to be interpreted in connection with the intention of the parties, and the circumstances in existence at the time the easement was granted and utilized." *Nelson v. Johnson,* 106 Idaho 385, 387, 679 P.2d 662, 664 (1984); *see Villager Condominium Ass'n, Inc., v. Idaho Power Co.,* 121 Idaho 986, 988, 829 P.2d 1335, 1337 (1992); *Burns v. Alderman,* 122 Idaho 749, 752, 838 P.2d 878, 882 (Ct.App.1992).

Even if the Use Agreement were not construed as an easement, the same "intention of the parties" analysis is warranted. The Use Agreement is, at the least, a contract, because it is binding upon the parties. If the Use Agreement is construed as a contract, "evidence of custom or usage may not be introduced to vary or contradict the terms of a plain and unambiguous contract[,]" however, "usage or custom is admissible . . . to ascertain the intention of the parties in reference to matters about which the contract is silent." *Commercial Ins. Co. v. Hartwell Excavating Co., Inc.,* 89 Idaho 531, 539–540, 407 P.2d 312, 316 (1965). Moreover, if the Use Agreement is construed as a restrictive covenant, once it has "been determined to be ambiguous, the court must determine the

intent of the parties at the time the instrument was drafted." *Thomas v. Campbell,* 107 Idaho 398, 404, 690 P.2d 333, 339 (1984).

Here, the Use Agreement is silent as to the definition of swimming. Thus, an analysis of extrinsic materials to ascertain the intent of the original parties to the Use Agreement is justified, regardless of how the Use Agreement is construed, i.e., easement, contract, or restrictive covenant. .

The district court interpreted the term "swimming" and determined that the Use Agreement gave the Respondent the right to use the Appellants' beach area "for picnics, sunbathing and gatherings for relaxation and social interaction ... [and][m]embers of the association and their bona fide guests need not be actually engaged in boating or swimming to be entitled to use the 'beach area.' " Because the term "swimming" was ambiguous, the district court's conclusion is a factual question.

Although "swimming" is ambiguous, the definition of that term can only include activities that can be considered swimming. Sunbathing, at least while wearing swimming attire, may be considered swimming. Picnics and gatherings for relaxation and social interaction would not under any stretch be swimming. The term "swimming" is not synonymous with historical use, and ambiguity regarding the scope of the term swimming is not an excuse to expand the term to include activities that clearly are not swimming.

Applying the proper standard of review, the inquiry is whether the district court based its decision on substantial, competent evidence. *Kohring* at 99, 44 P.3d at 1154. In reviewing the record, we determine the district court allowed evidence of all historical uses and improperly expanded the definition of "swimming." The record contains substantial and competent evidence to define the term "swimming." Therefore, the district court's expansive definition of "swimming" is vacated and remanded to define the term "swimming" in accordance with this opinion.

### 2. The "Parking Area" Boundaries In The Use Agreement.

■ As with the above issue, this Court's first inquiry is to determine whether the parking area mentioned in the Use Agreement is ambiguous. Determining ambiguity is a question of law. *Chubbuck* at 201, 899 P.2d at 414; *Union Pac. R.R. Co.,* at 437–38, 50 P.3d 450 at 452–53. *Id.* "An instrument which is reasonably subject to conflicting interpretation is ambiguous." *Latham* at 858, 673 P.2d at 1052.

The Use Agreement provides, "use of parking area shall be contingent upon payment of parking fees on a daily or annual basis payable to the Powers." However, the agreement does not describe the boundaries of the parking area; rather, a map is attached to the agreement representing the lots of Mountain View Addition. The map contains the words "parking," but the boundaries of the parking area are not provided.

The Appellants argue that the parking area is limited to the shoreline of the lake and the metes and bound line, which is represented on the map as a rectangle. The Respondent argues the parking area is defined to the west by a dashed curved line, which coincides with the foot of a steep hillside. The Use Agreement Map shows a metes and bound line and a dashed line, which represents the border of the steep hill. There seems to be no issue as to the location of the parking area boundary on the east, lake side, or the north side or the south side of the rectangle.

In short, there are three plausible boundaries for the parking area. First, the area argued by the Appellants; second, the area as defined by the district court; or third, the entire area abutting to the steep hill or the dotted line as argued by the Respondent. We determine the parking area of the Use Agreement is ambiguous because three interpretations of the parking area are possible.

The district court's decision as to the boundaries of the parking area will be upheld if the decision is supported by substantial, competent evidence. *Kohring* at 99, 44 P.3d at 1154. Robert Mansfield, landowner and President of the Landowners Association, testified the parking area boundary was the base of the slope. Also, the Respondent at trial offered exhibits tending to represent a

parking area larger than the area Appellants claim. Further, an aerial photograph does not depict a parking boundary in the area claimed by the Appellants. Rather, the area looks geographically continuous with no natural or artificial boundaries clear up to the base of the steep hill. Therefore, this Court upholds the district court's promulgated boundaries for the parking area because substantial, competent evidence shows the parking area extends beyond the rectangular area argued by the Appellants.

### 3. Mountain View, Rather Than The Cools, Has The Choice Of Whether Mountain View Would Pay Daily Or Annual Parking Fees.

■ As the above two issues have illustrated, our initial inquiry is whether the Use Agreement and its fee arrangement is ambiguous. Determining ambiguity is a question of law. *Chubbuck* at 201, 899 P.2d at 414; *Union Pac. R.R. Co.* at 437–38, 50 P.3d at 452–53. "An instrument which is reasonably subject to conflicting interpretation is ambiguous," as such, its interpretation is a question of fact. *Latham* at 858, 673 P.2d at 1052.

The district court determined the Respondent may choose whether to pay daily or annual parking fees if the Appellants choose to charge a parking fee. The Use Agreement language that the district court interpreted provided that "[u]se of [the] parking area shall be contingent upon payment of parking fees on a daily or annual basis payable to the Powers." Because this section of the Use Agreement failed to explicitly state which party could choose the form of payment (i.e., daily or annual) for the parking fees, we conclude the parking fees section is ambiguous and, therefore, requires additional analysis to interpret that section as a question of fact.

First, the plain language of the parking fees section gives the option of paying daily or annual fees, when fees are required, to the Respondent. As quoted above, the Use Agreement parking fee section provides by its terms, upon payment of fees on either a daily or annual basis by the Respondent, the Appellants must allow use or relinquish some rights in the parking area. Thus, the Appellants must perform after the Respondent renders the condition of a payment of fees. Therefore, it matters not whether a daily or annual fee is paid because if either one is paid the Appellants must perform by allowing use of the parking area. It follows, therefore, that the Respondent has the option of paying either a daily or annual fee because the Appellants must perform their end of the bargain upon payment of either form of the fee.

Second, the section of the Use Agreement pertaining to the boat launching area stated: "the Powers may impose a minimum daily launch fee and may provide the alternative of an annual launch fee." In other words, that section of the Use Agreement explicitly gives the option of setting daily or annual launch fees to the Powers, who were the landowners prior to the Appellants. In contrast, the section at issue here does not explicitly state which party shall determine the form of fee payment (i.e., daily or annual). Because the Use Agreement explicitly gives the Appellants power to determine the launch fees but not the parking fees, we conclude that the parties to the Use Agreement intended the Respondent to determine the form of the parking fees. In conclusion, for the above reasons, we affirm the district court's decision granting the Respondent the option of paying either daily or annual parking fees.

### B. Neither Party Is Entitled To Attorney Fees On Appeal?

The Use Agreement provides, "[i]n the event that litigation is commenced to enforce any term or condition of this agreement, the prevailing party shall be entitled to costs and reasonable attorney fees as determined by the court." The district court is affirmed on all issues except for a remand to determine the definition of swimming. Nevertheless, "[b]ecause of the mixed result, no attorney fees or costs are awarded to either party." *Humberger v. Humberger,* 134 Idaho 39, 45, 995 P.2d 809, 815 (2000).

### IV.

### CONCLUSION

In conclusion, this Court determines the Use Agreement was ambiguous in that a

definition was not provided for "swimming." The district court definition of "swimming" is vacated and remanded because the court improperly expanded the definition of "swimming." Furthermore, the "parking area" provision of the Use Agreement was ambiguous because the "parking area" was subject to three possible boundaries. The district court is affirmed because its interpretation of the "parking area" boundary is supported by substantial, competent evidence. Moreover, the Use Agreement "parking fees" provision is ambiguous because it failed to explicitly state which party could choose the form of payment for the parking fees (i.e., daily or annual). Nevertheless, we affirm the district court's decision to construe the "parking fees" section of the Use Agreement in the manner giving the option of daily or annual parking fees to the Respondent because the Appellants must perform their end of the bargain upon payment of either form of the fee, and also because the Use Agreement explicitly gives the Appellants power to determine the launch fees but not the parking fees. Lastly, neither party is entitled to attorney fees because this case is a mixed result.

Justices SCHROEDER, EISMANN and BURDICK concur.

Chief Justice TROUT concurs in the result except for Part III A2 from which she dissents without opinion.