# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46692

SHELLEY LORENZEN, Trustee of the )
Phyllis E. Lorenzen Revocable Trust and )
Personal Representative of the Estate of )    Moscow, April 2020 Term
Phyllis E. Lorenzen, )
                                 )    Opinion filed: July 2, 2020
    Plaintiff-Counterdefendant-Respondent, )
                                   )    Melanie Gagnepain, Clerk
v. )
                                   )
DAVID A. PEARSON and CYNTHIA D. )
PEARSON, husband and wife, )
                                   )
    Defendants-Counterclaimants-Appellants. )

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Lansing L. Haynes, District Judge.

The judgment of the district court is <u>affirmed</u>.

Robert Elijah Covington, III, Hayden, for Appellants.

Ramsden, Marfice, Ealy & DeSmet, LLP, Douglas S, Marfice, Coeur d'Alene, for Respondent.

---

MOELLER, Justice.

This appeal concerns a contentious dispute between neighbors over a shared driveway on residential property. Following a trial, the district court found the easement language in a quitclaim deed to be ambiguous, and subsequently construed the deeds to grant both parties express easements to the shared driveway, which extend to their heirs, successors and assigns. The Pearsons timely appealed. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Lorenzen Revocable Trust ("Lorenzen")[1] and David and Cynthia Pearson own neighboring properties near Hayden Lake in Kootenai County, Idaho. The properties share a

---

[1] Shelley Lorenzen is the trustee of both the Phyllis E. Lorenzen Revocable Trust and Lewey H. Lorenzen Bypass Trust, each a "sub-trust" under the Lorenzen Revocable Living Trust. She is the daughter of Lewey and Phyllis

1

common driveway. The properties were originally part of a 1,400 acre estate. Over the years, parcels were carved off the estate and frequently replatted. Two of those parcels include a cabin owned by Lorenzen and the "Red Barn" property owned by the Pearsons. Both Pearsons' and Lorenzen's properties lie on East Hayden Lake Road, which "is narrow, winding and without shoulders or space to park vehicles." The shared driveway connects to East Hayden Lake Road, crossing along Pearsons' residential property (parcel TN 9800) to an "oval driveway" that is located primarily on Lorenzen's property (parcel TN 10420). The asphalt road accessing these properties dates back to at least 1946 and has been utilized continuously, without interruption or known dispute, as a shared driveway.

The "Red Barn" property was previously owned by Roy and Quintilla Williams. In the 1960s, Lewey and Phyllis Lorenzen were friends and business associates with the Williamses, and would frequently lease the Red Barn property for summer holidays. During these vacation getaways to Hayden Lake, the Lorenzens also became friends with a neighbor, "Mrs. Johnson," who owned the cabin on parcel TN 3507. They subsequently purchased her cabin in 1968. They obtained additional adjacent parcels surrounding TN 3507 over the years, although many of these deeds are not in the record. This includes Lorenzen's strip of land (TN 11366) alongside the shared driveway (and leading to East Hayden Lake Road), which is a landscaped area used for overflow parking. As of the date of trial, Lorenzen owned the contiguous parcels TN 37, TN 3364, TN 3573, TN 3894, TN 3507, TN 10420, TN 11365, and TN 11366. Pearsons owned the contiguous parcels TN 39, TN 40A, TN 3887, TN 3513, and TN 9800.

In 1976, the Williamses conveyed a tract of land to Lewey and Phyllis Lorenzen via a quitclaim deed with the following provisions:

> RESERVING unto Grantors, their heirs, successors and assigns, the right to use the oval roadway as same now exists on the above described property, and
>
> Also granting to Grantees the right to use for ingress and egress the existing roadway running from the South-westerly corner of the above described property Southerly to the existing highway.

This conveyed property is now labeled TN 10420 and contains the oval driveway located in front of Lorenzen's cabin. Two years later, the Williamses conveyed a "delta-wing-shaped parcel"

Lorenzen, who purchased the cabin in 1968. The Lorenzens later conveyed the cabin to their Trust in 1995. Shelley also serves as the personal representative of the Estate of Phyllis E. Lorenzen, who passed away in late 2016 after commencing this litigation. Though Shelley is not a plaintiff in her personal capacity, "Lorenzen" is used to address the plaintiffs generally—both the trust and the estate.

(now labeled TN 11365) to the Lorenzens through another quitclaim deed to close the "gap" between the Lorenzens' parcels and the Red Barn parcels. Between these conveyances to the Lorenzens, the Williamses sold the "Red Barn" parcel (marked TN 3513) and the shared driveway parcel (marked TN 9800) in 1977 to joint purchasers: Cyrus Vaughn III, and the married couple Porter and Joeve Wilkinson. However, "for some reason not in the record," this deed was not recorded until March of 1996.

Within the Williams's warranty deed granting the property to Vaughn and the Wilkinsons (hereinafter "the Vaughn Deed") was the following language:

> Also included is the right to use the oval driveway as same existed in October 1976 on and over the Lorenzen property above described.
>
> . . .
>
> Subject to right granted to Lewey H. Lorenzen and Phyllis L. Lorenzen, their heirs, successors and assigns the right to use for ingress and egress roadway existing as of October 1976 running from the Southwesterly corner of the Lorenzen property above described Southerly to the existing highway.

The Red Barn property was again sold in 1997 to Susan Philips through a warranty deed. During her ownership, the Susan Philips Trust conveyed TN 11365, the delta-wing shaped parcel, to the Lorenzen Revocable Trust through a quitclaim deed. This was done "to clear any interest Susan L. Philips may have in the [parcel], that may have been included" by mistake in the 1997 warranty deed granting her the Red Barn property. Lewey and Phyllis Lorenzen also gave permission through a letter for Philips to landscape parcels 11365 and 11366—the stretches of property they used for parking. In this letter, the Lorenzens explained this revocable license was "subject to [their] approval of the landscaping involved, which must preserve [their] right to park up to five cars in this area."

In 2013, Philips sold the Red Barn property to the Pearsons through a warranty deed. Although the easement language was not in Philips's or Pearsons' respective deeds, the easements originally granted and reserved in the 1976 deed were recorded with the county and listed as exceptions from coverage in Pearsons' title insurance policy. Both Lewey and Phyllis Lorenzen are now deceased, with Phyllis having passed away soon after litigation commenced. While the Lorenzen family still utilizes the cabin for holidays, Lorenzen primarily leases the cabin to tenants.

From 2013 onward, disputes over the shared driveway began. There is ample testimony in the record from both parties documenting these quarrels. The disputes culminated in 2016

3

when Pearsons installed an electronic gate to control access to the shared driveway. On October 14, 2016, Phyllis Lorenzen filed a complaint seeking a declaratory judgment to define the rights concerning the parties' easement and access rights, as well as listing other causes of action. Four days later, Lorenzen filed a motion for a preliminary injunction against Pearsons, seeking to enjoin them "from blocking or otherwise interfering with access" via the shared driveway. The district court granted the motion for a preliminary injunction, ordering Pearsons to provide an access code or remote control to the electronic gate and restraining both parties "from blocking or otherwise interfering with access" to their respective properties via the shared driveway. The next month, Phyllis Lorenzen passed away. Pearsons later filed an answer and counterclaim, arguing that Phyllis Lorenzen's death "ended the express easement" from the 1976 quitclaim deed. They also filed a motion to dissolve the court's prior preliminary injunction. The district court denied Pearsons' motions, and the case proceeded to trial with the injunction remaining in effect until the court rendered a decision on the merits.

Following the trial, on February 28, 2018, the district court issued a memorandum decision holding that the easement language in the quitclaim deeds was ambiguous. The district court ultimately ruled that both parties had express easements granted to them as well as their heirs, successors and assigns: Lorenzen has an express easement for ingress and egress via the shared driveway, and Pearsons have an express appurtenant easement to use the oval driveway "in a manner that allows [Lorenzen] to use [it] without unreasonable restriction." The district court also enjoined both sides from blocking or unreasonably restricting access to their respective easements. The resulting judgment dismissed the remaining claims with prejudice.

Pearsons filed a motion to reconsider, which was argued before the district court on August 28, 2018. They urged the district court to look at the properties in person, reconsider its judgment finding the language ambiguous, and argued that it was not the province of the district court "to ascertain" the intention of what is "the southwest corner of 10420." The final contention was that the judgment and record did not establish the exact metes-and-bounds description of the easements, especially where the northwest section of the oval driveway intersected with the Pearsons' property. At the hearing, the court informed Pearsons that "[i]t was represented to [the court] that, in fact, the parties had agreed to that legal description" and that Pearsons should give the court notice within seven days if they objected to it. Pearsons timely filed an objection, and then the district court allowed the parties time to decide if a new

4

survey was required. The court reconvened on December 18, 2018, for a second hearing on the motion to reconsider. At this second hearing, Pearsons asked the court to hold another hearing to ascertain and establish the western boundary of the easement where the oval driveway intersected with Pearsons' property line. The district court declined and explained that the use of the oval driveway on Pearsons' property

> is limited to the minimum amount necessary to effect the historical use, which is to allow the reasonable ingress and egress of vehicles through the western portion of that oval driveway . . . The exact extent of that in terms of width is not in evidence. I don't think it needs to be.

The district court then denied Pearsons' motion to reconsider from the bench. The court also reminded Pearsons and their counsel that they had had multiple opportunities over the last ten months to bring forth their own evidence of a proper metes-and-bounds description but failed to do so:

> And one thing this Court doesn't appreciate is your unavailability. I've tried and tried and tried to get the clerk to contact your office to set hearings, to bring things forth, and we get nothing. And the reason this hearing was set today is because we tried and tried and tried to get ahold of your office for available dates. There was no answer.

> Pearsons timely appealed.

## II.  STANDARD OF REVIEW

Whether a disputed legal instrument is ambiguous ultimately determines our standard of review over the lower court's interpretation. *Dr. James Cool, D.D.S. v. Mountainview Landowners Co-op. Ass'n, Inc.*, 139 Idaho 770, 772, 86 P.3d 484, 486 (2004). The existence of ambiguity itself is a question of law that this Court freely reviews. *Knipe Land Co. v. Robertson*, 151 Idaho 449, 455, 259 P.3d 595, 601 (2011). An unambiguous legal instrument is given effect as a matter of law, while evidence of an ambiguous instrument's meaning is submitted to the finder of fact. *Id.*

Factual findings from a trial court "will be liberally construed on appeal in favor of the judgment entered, in view of the trial judge's role as trier of fact." *W. Heritage Ins. Co. v. Green*, 137 Idaho 832, 835, 54 P.3d 948, 951 (2002). Thus, if we affirm the district court's legal determination that the quitclaim deed was ambiguous, our review of the trial judge's findings of fact would be limited to ascertaining whether the court's interpretation is supported by substantial and competent evidence. *Cool*, 139 Idaho at 772, 86 P.3d at 486; *Green*, 137 Idaho at

5

835, 54 P.3d at 951. Where the findings are based on substantial, but conflicting, evidence, they will not be overturned on appeal. *Green*, 137 Idaho at 835, 54 P.3d at 951.

## III.    ANALYSIS

### A. The quitclaim deed created an easement that extends to Lewey and Phyllis Lorenzen's heirs, successors and assigns.

Pearsons argue that the district court incorrectly determined that the quitclaim deed was ambiguous, and that its plain language did not extend an easement to Lewey and Phyllis Lorenzen's heirs, successors and assigns. We disagree. The quitclaim deed is ambiguous due to the nature of the deed itself and the language utilized, which made the district court's consideration of the surrounding facts and circumstances in interpreting the deed appropriate.

#### 1.   The quitclaim deed is ambiguous.

To determine if a deed is ambiguous, it must be reviewed as a whole. *Camp Easton Forever, Inc. v. Inland Nw. Council Boy Scouts of Am.*, 156 Idaho 893, 900, 332 P.3d 805, 812 (2014). Where the deed's language is unambiguous, the trier of fact settles the intention of the parties as a matter of law by using the plain language of the instrument. *Id.* at 899–900, 332 P.3d at 811–12. However, if the deed is ambiguous, the parties' intent becomes a question of fact. *Id.* The trier of fact must then "consider all of the surrounding facts and circumstances and view the deed as a whole and in its entirety." *Id.* When this Court interprets an ambiguous deed, its "primary goal is to give effect to the parties' real intent." Id. at 899, 332 P.3d at 811.

A deed is ambiguous "when its language is reasonably subject to conflicting interpretations," such as when the language "lends itself, without contortion, to a number of inconsistent meanings." *Id.* at 900, 332 P.3d at 812. For instance, this Court found the term "swimming," as used in a deed, to be ambiguous where its accompanying activities were not defined. *Cool*, 139 Idaho at 773, 86 P.3d at 487. To strictly interpret "swimming" as propelling oneself through the water would have led to the absurd result of barring swimmers from resting near the water and parents from acting as lifeguards. *Id.* Accordingly, "swimming" was an ambiguous term as used in the context of the deed. *Id*. Thus, it is not only the words in an instrument that must be considered, but also their context, in order to ascertain whether a deed is ambiguous.

In looking at the deed at issue in this case as a whole, it is important to first note the type of deed utilized by the Williamses to create the easement: a quitclaim deed.  "A quitclaim deed conveys whatever interest the grantors possess at the time of the conveyance," including legal

6

title. *Luce v. Marble*, 142 Idaho 264, 270, 127 P.3d 167, 173 (2005). As the language states in the Williamses' quitclaim deed to Lorenzen, this means the Williamses covenanted to "convey, release, remise and *forever* quitclaim" the granted interest in the property at issue. (Emphasis added). Likewise, the Williamses "forever quitclaim[ed]" and "*grant[ed]* to [Lewey and Phyllis Lorenzen] the right to use for ingress and egress the existing roadway running from the South-westerly corner of the above described property Southerly to the existing highway." To "forever quitclaim" means to give up the interest once held *forevermore*. Thus, the grantor cannot claim a reversionary interest in the property after forever conveying his full interest to the grantee via a quitclaim deed; rather, additional restrictive language would be needed to create a reversionary interest in the grantor and his successors. *See C & G, Inc. v. Rule*, 135 Idaho 763, 767, 25 P.3d 76, 80 (2001) ("In addition, there is no language in either of the deeds indicating that the grantors intended any type of reversionary interest in the properties such as a right of re-entry or possibility of reverter."). *See also Union Pac. R. Co. v. Ethington Family Tr.*, 137 Idaho 435, 438, 50 P.3d 450, 453 (2002) (explaining that the deeds conveyed fee simple title in part because "[t]he language of these deeds does not limit the use of the parcels for railroad purposes" and uses the term "forever."). Similarly, the verb "grant" often indicates a conveyance of the full interest. *Grant*, GARNER'S DICTIONARY OF LEGAL USAGE (3rd Ed. 2011) ("today, the verb denotes the transferring of the grantor's full interest, as when a fee simple absolute is being conveyed"). Here, however, there is no additional language indicating the grantors retained a reversionary interest. The deed simply "grant[ed]" Lewey and Phyllis Lorenzen the property parcel as well as "the right to use" the shared driveway "for ingress and egress." The duration of the grant was "forever." Thus, Pearsons cannot claim a reversionary interest where their predecessors, the Williamses, forever conveyed their full interest in the property. Even if the Pearsons are correct, and the Williamses attempted to retain an interest, then the way they did so renders the deed ambiguous.

Beyond the form of the deed, additional language contained within the quitclaim deed renders it susceptible to conflicting interpretations. For example, the easement failed to specify additional grantees beyond Lewey and Phyllis Lorenzen, such as their heirs, successors and assigns, even though the easement was granted and "forever quitclaim[ed]." In looking at the whole instrument, the easement was created within the same quitclaim deed granting the Lorenzens parcel TN 10420, which contains most of the oval driveway. It would be very strange,

7

in the least, to grant someone a parcel of property in perpetuity, but only provide access to it for the duration of the original grantee's life or ownership. It is even more unusual to do so when that granted parcel contains a portion of the driveway that remains inaccessible without the easement. Indeed, the language made no accommodation for general invitees, family, guests, or other common beneficiaries or uses that would require access to the cabin's front door. Thus, not only is any reversionary language absent, but the current interpretation the Pearsons propose creates inconsistent results for access to Lorenzen's property.

Equally odd is the easement's placement from the "South-westerly corner" of TN 10420, without any provision for egress through the northwest section of the oval driveway. The Pearsons interpret this language to mean that the easement was restricted to the southwest corner, making any extensions north and west a significant impairment on the Lorenzen property "by shrinking a small parking and maneuvering space." Yet under the Pearsons' interpretation, Lorenzen or a tenant could only go into the oval driveway—but not out of it—without reversing their vehicle in what is already "a small parking and maneuvering space." The common-sense purpose of an oval driveway is to drive *through and around* it without the necessity of backing up or turning around, which would obviously then include the right to ingress *and egress* through the northwest section, as expressly provided in the deed.

As in *Cool*, "to Grantees" and the "South-westerly corner" are ambiguous terms where the accompanying beneficiaries and easement locations are not internally defined. To strictly interpret these terms on the face of the deed would create an access easement available only to Lewey and Phyllis Lorenzen—not even their family members who utilized the cabin on holidays—and would only permit access to their property via one-half of their oval driveway. Any other individual, including Shelley Lorenzen, would be barred from using the shared driveway to reach the cabin's front entrance. Any vehicle, including Lewey Lorenzen's, would have been prohibited from entering the oval driveway at the northwest entrance. Such an interpretation is incongruent with the language of the quitclaim deed to "forever" grant an easement to the shared driveway. Accordingly, we conclude that the easement's language is ambiguous as used in the context of the deed.

## 2. The easement is appurtenant, making this case distinguishable from *King*.

Both parties cite to the case *King v. Lang*, in which this Court concluded that an easement agreement was unambiguous in granting a narrow easement only to a specific family. 136 Idaho

905, 909, 42 P.3d 698, 702 (2002). In *King*, the Court analyzed an easement agreement between the Langs and Waggoners, neighbors near the Spokane River. *Id.* at 907, 42 P.3d at 700. The easement agreement contained the following two provisions:

> NOW, THEREFORE, in consideration of the exchange of mutual promises between the grantors [Waggoners] and the grantees [Langs], *the grantors do hereby grant an easement to the grantees, their heirs and assigns, for road purposes for ingress and egress,* over a strip of land 14 feet in width across the following described real property . . .
>
> As partial consideration for the aforesaid easement, *the grantees [Langs] grant the grantors [Waggoners] and their immediate families the right to use the road across the grantees' property described above,* to reach the Spokane River for the purpose of fishing on the banks thereof.

*Id.* at 907–08, 42 P.3d at 700–01 (emphasis included). The Waggoners utilized this easement for river access. *Id.* Darlene Knapp was the Waggoners' successor in interest—and their daughter—who continued to use the river-access easement as "immediate family." *Id.* at 08, 42 P.3d at 701. However, once Knapp sold her property to a new, non-familial purchaser, the Langs installed a gate and "no trespassing signs" to restrict the new buyer's access to the river across their property. *Id.*

This Court determined that two easements were created by this agreement. *Id.* The first easement was granted to the Langs and "their heirs and assigns." *Id.* at 908, 42 P.3d at 701. It "clearly identified a dominant estate and a servient estate and identified the location of the easement." *Id.* In contrast, the second easement "identified no dominant or servient estate, and gave a right of access to the river to people who may have no interest in the land itself, such as members of the Waggoners' immediate family." *Id.* The distinction between the language within the two easements led the Court to conclude that the language unambiguously created an easement in gross—the Waggoner family's right of access to the Spokane River—that was not transferred to the new buyer simply by her purchase of the property. *Id.* This case is distinguishable from *King* by the nature of the granted easement and its full conveyance within the quitclaim deed.

Easements are either appurtenant or in gross. "In construing an easement in a particular case, the instrument granting the easement is to be interpreted in connection with the intention of the parties, and the circumstances in existence at the time the easement was granted and utilized." *Nelson v. Johnson*, 106 Idaho 385, 387, 679 P.2d 662, 664 (1984). Where there is doubt as to the intent of the grantor, an "easement should be presumed appurtenant." *Id.* at 387–

88, 679 P.2d 662, 664–65. An appurtenant easement has a dominant estate to which the easement is attached and must "bear some relation to the use of the dominant estate." *King*, 136 Idaho at 909, 42 P.3d at 702 (quoting *Nelson,* 106 Idaho at 387, 679 P.2d at 664). An appurtenant easement is incapable of existence or separation from that dominant estate, and any attempt at severance must fail. *Id.* Thus, an appurtenant easement generally passes with the possession of the dominant estate. *Id.* In contrast, an easement in gross is "merely a personal interest in land of another." *Id.* This right is not assignable or attached to the land; rather, the easement in gross only benefits a particular person (or persons). *Id.*

The key distinguishing factor here is that the Williamses' quitclaim deed created an appurtenant easement while *King* dealt with an easement in gross. *King*'s river-access easement was expressly created only to benefit the immediate Waggoner family, not the land. *King*, 136 Idaho at 908, 42 P.3d at 701. There was no dominant or servient estate and the right of access was to individuals without any interest in the grantor's land itself. *Id.* In contrast, the easement here is appurtenant and attached to a dominant estate. This was determined by the district court based on several factors from the record. First, the record established continuous use of the shared driveway and oval driveway by both the cabin and Red Barn property owners. From 1946 onward, the shared driveway provided access to both properties, and the complete oval driveway—including the northwest exit—without dispute until problems developed between the Pearsons and Lorenzen in 2013. Second, the Pearsons purchased their property with actual notice that there was a recorded easement that burdened his property. Third, the Williamses and Lorenzens were close friends. It was unlikely that the Williamses would have granted an access easement in gross when conveying TN 10420, just as it was unlikely that the Lorenzens would have purchased TN 10420 with such an access restriction. Such an interpretation would have only allowed the Lorenzens to use half of their driveway and in a more restricted manner than they had historically used it.

In addition to these facts, the district court examined the language from the Vaughn Deed to determine the intent of the parties in 1976. Pearsons contend that the court's consideration of the Vaughn Deed was in error because it was not contemporaneous with the earlier conveyance to Lorenzen and contradicts the easement's plain language. We disagree. Because (1) the Vaughn Deed was dated only 5 months after the 1976 quitclaim deed to Lewey and Phyllis Lorenzen, (2) it mentions the Lorenzens by name, and (3) it concerned an adjacent property on

10

the same road, the district court rightly considered the Vaughn Deed as "substantially contemporaneous" and relevant in determining the intent of Williamses when they granted the easement to the Lorenzens.

In the Vaughn Deed, the Williamses included the following provision when conveying the Red Barn property:

> Subject to right granted to Lewey H. Lorenzen and Phyllis L. Lorenzen, *their heirs, successors and assigns* the right to use for ingress and egress roadway existing as of October 1976 running from the Southwesterly corner of the Lorenzen property above described Southerly to the existing highway.

(Emphasis added). Inasmuch as the Lorenzens were strangers to the conveyance between Williamses and Vaughn, the Vaughn Deed could not expand, or otherwise create an interest in the Lorenzens. *See Davis v. Gowen*, 83 Idaho 204, 209–10, 360 P.2d 403, 406 (1961). Nevertheless, for the district court, the Vaughn Deed's language was relevant as further evidence of Williamses' intent when they created the shared-driveway easement in 1976. Indeed, the two reservations were drafted only five months apart and the additional language of the Vaughn Deed helps clarify the ambiguities of the 1976 deed. Considering the long history of the easement's undisputed and unbroken use from 1946, the differing language in the two deeds demonstrates that the Williamses intended to create a right in Lorenzen and his "heirs, successors and assigns," as the Vaughn Deed states. Accordingly, the district court concluded that Williams intended to attach the easement to the estate and make it inheritable and assignable, either of which would make the easement appurtenant. This conclusion was supported by substantial and competent evidence from the record. It also corresponds with the law's presumption that easements are appurtenant in cases of doubt. *Nelson*, 106 Idaho at 387–88, 679 P.2d at 664–65. Therefore, the district court's conclusion that the totality of the evidence shows that Lorenzen has an appurtenant easement to use the shared driveway for ingress and egress was correct.

### B. The district court's findings were supported by substantial and competent evidence.

Because the deed is ambiguous, the parties' intent is a question of fact. *Camp Easton Forever, Inc.*, 156 Idaho at 899–900, 332 P.3d at 811–12. The district court considered the surrounding facts and circumstances in interpreting the deed after finding the language ambiguous, so we must review the findings to ascertain whether they are based on substantial and competent evidence. *Cool*, 139 Idaho at 772, 86 P.3d at 486; *Green*, 137 Idaho at 835, 54 P.3d at 951. The Pearsons contend that several of the district court's factual findings, which stem

11

from its legal conclusion that the deed was ambiguous, were in error. We have already addressed two of these findings: there was substantial and competent evidence that the easement is appurtenant and that the court did not err in considering the Vaughn Deed. Pearsons next argue the court erred in finding (a) that the easement includes access through the northwest corner of the oval driveway, which extends to some degree onto Pearsons' property; and (b) that the easement gave Lorenzen "the unrestricted right to access" TN 11365 and TN 11366 for parking. We will address each issue in turn.

### a. There is substantial and competent evidence to support the finding that the easement includes access through the northwest corner of the oval driveway.

On finding the easement to be appurtenant, part of the district court's opinion included an analysis of the oval driveway. While Pearsons argue that the easement expressly restricts Lorenzen to the southwest corner of the oval driveway, the district court ruled that Lorenzen could use the *entire* oval driveway. This includes the "northerly arm of the oval driveway" for ingress and egress. Despite Pearsons' assertion that there is "no evidence in the record of an alternate meaning . . . that would extend the easement north and west of the southwest corner of TN 10420," the district court found the history of the oval driveway's use compelling. As summarized by the district court, the record shows that the entire oval driveway was used prior to and following the creation of the easement in 1976. Likewise, the district court found it significant that the western side of the oval driveway was on property once owned by Williamses. This fact evidenced that Williamses intended to include the right to use that portion of the oval driveway for ingress to and egress from TN 10420. Furthermore, common use and common sense indicate that a driver should be able to travel completely around the oval, which would require either ingress or egress through the northwest section. Altogether, these facts are substantial and competent evidence that Williamses intended for the easement to grant the Lorenzens access to the entire oval driveway.

### b. There is substantial and competent evidence to support the finding that the easement gave the Lorenzens "the unrestricted right to access" TN 11365 and TN 11366 for parking.

The district court also examined the historical use of the shared driveway and how it provided access to parcels TN 11365 and TN 11366, as well as the cabin on TN 3507. The record shows that parcels TN 11365 and TN 11366 were landscaped areas alongside the eastern border of the shared driveway's parcel. While nothing is known from the record about when

these parcels were first obtained, Shelley Lorenzen testified that her family used this area for parking, especially for overflow parking when they had several guests.

Pearsons insinuate that the only reason Lorenzen would have obtained and kept TN 11366 was to create a new access route to his property from Hayden Lake Road. Undoubtedly, this is a potential use for TN 11366. Pearsons' argument, however, is undermined by decades of use of those parcels for parking and Lewey and Phyllis Lorenzen's license to Susan Philips to landscape those parcels. Indeed, Philips was given permission to landscape only in a manner that preserved the Lorenzens' "right to park up to five cars" in that area. As determined by the district court, these facts show a history of continuous use of the shared driveway to access these parking parcels as well as the cabin on TN 3507. Despite the unavailability of any testimony from the deceased Lorenzens and Williamses as to their original intent, the documentary and testimonial evidence that was presented demonstrated years of use and evince an intent for the shared driveway to provide access to these parking areas. Therefore, the district court relied upon substantial and competent evidence in concluding that the easement included access to TN 11365 and TN 11366 for parking.

### C. The district court did not err in utilizing a metes-and-bounds description of the easement from the plaintiff's land survey to describe the easement.

After the district court issued its opinion, the parties "grappled with how to properly describe" the shared and oval driveways for incorporation into a final judgment. When the Pearsons objected to the original land survey provided by Lorenzen's expert witness, the district court gave the parties a limited timeframe in which to select a new land surveyor; however, the parties failed to do so. Pearsons' counsel was even reprimanded by the district court for his consistent "unavailability." The original land survey in question was offered and admitted as Plaintiff's Exhibit 13 during the trial. It was admitted without objection and used during the examination of multiple witnesses, including by Pearsons' attorney. In finalizing the judgment, the district court incorporated the metes-and-bounds descriptions from this land survey.

Now, Pearsons argue that the district court erred in establishing a legal description of the easement from the Plaintiff's land survey. He argues that another hearing should be held to present evidence to establish an accurate metes-and-bounds description. Lorenzen argues that on appeal Pearsons failed to cite to any authority or portions of the record for this argument as required by Idaho Appellate Rule 35(a)(6). In the alternative, were the Court to consider this issue, Lorenzen contends that Pearsons had ample opportunities to offer their own legal

13

description, but failed to do so. Additionally, Lorenzen asserts that Pearsons failed to show why the final judgment's description was deficient. We agree.

While Pearsons may have objected to the legal description used by the district court after judgment was entered, they failed to provide an alternative metes-and-bounds survey for the district court to consider despite having had months to do so. Only after their counsel was repeatedly unavailable to the court when it tried to request information or schedule such a hearing, did the district court accept and utilize the only legal description admitted as evidence. Pearsons cannot complain over the results of their inaction now, especially when they failed to object to the admittance of the land survey as evidence at trial.

### D. Whether Lorenzen is entitled to attorney fees on appeal.

Lorenzen claims it is entitled to costs and attorney fees on appeal. First, Lorenzen prevailed in this appeal, so it is entitled to costs as a matter of course. I.C. § 12-107; *Big Wood Ranch, LLC v. Water Users' Ass'n of Broadford Slough & Rockwell Bypass Lateral Ditches, Inc.*, 158 Idaho 225, 233, 345 P.3d 1015, 1023 (2015).

In addition, Lorenzen quotes *Pass v. Kenny* to argue for attorney fees where the appellate court was simply invited to second-guess the trial court's findings. 118 Idaho 445, 449, 797 P.2d 153, 157 (Ct. App. 1990). Although the Pearsons did not prevail on appeal, the Court is mindful that the ambiguities in the instruments at issue in this case were a major source of this dispute. Notably, the Pearsons played no part in the drafting of these deeds. Although this Court and the district court did not agree with the Pearsons' argument that the quitclaim deed was unambiguous, we cannot say that their arguments on appeal were unreasonable under the circumstances. Therefore, we decline to grant attorney fees on appeal.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court and award costs on appeal to Lorenzen.


Chief Justice BURDICK, Justices BEVAN and STEGNER **CONCUR.**


BRODY, Justice, dissenting.

The majority concludes that the quitclaim deed at issue created an easement extending to the Lorenzens' heirs, successors, and assigns. It bases this conclusion, in part, on the

determination that the quitclaim deed is ambiguous. Because I believe the quitclaim deed is unambiguous, I dissent.

The majority's search for an ambiguity is strained. The quitclaim deed did three things. First, it conveyed, released, remised and forever quitclaimed land to the Lorenzens. Second, it reserved an easement across that land for the Williamses and their heirs, successors, and assigns. Third, it granted an easement to Lewey and Phyllis Lorenzen to use the driveway on the Williamses' land. The deed stated:

> For Value Received ROY T. WILLIAMS and QUINTILLA WILLIAMS, his wife, do hereby convey, release, remise, and forever quitclaim unto LEWEY H. LORENZEN and PHYLLIS L. LORENZEN, his wife, whose current address is West 3211 Daisy, Spokane, Washington 99208, the following described premises, to-wit:
>
> [metes and bounds description omitted]
>
> SUBECT TO: Building and use restrictions of record, easements and rights of way common to the area.
>
> RESERVING unto Grantors, their heirs, successors and assigns, the right to use the oval roadway as same now exists on the above described property, and
>
> Also granting to Grantees the right to use for ingress and egress the existing roadway running from the Southwesterly corner of the above described property Southerly to the existing highway.

The majority emphasizes the fact that the deed at issue is a quitclaim deed, reasoning that because a quitclaim deed conveys whatever interest the grantor has at the time of the conveyance, the quitclaim deed's inclusion of an easement reservation creates an ambiguity. However, the form of the deed does not matter here. The only difference between a quitclaim deed and other forms of deeds is in the warranties they convey. Thel Casper, *Warranties of Title - (Use the Right Deed)*, 45-NOV Advocate (Idaho) 20 (2002) ("There are three basic deed types used in Idaho which differ significantly with respect to warranties of title: the quitclaim deed, the grant deed and the warranty deed.") A quitclaim deed conveys *no more* than any interest the grantor has at the time of the conveyance. 26A C.J.S. *Deeds* § 14. However, nothing prevents a quitclaim deed from transferring less than a grantor's full interest if the grantor explicitly reserves some part of that interest to himself.

15

Moreover, the "forever quitclaim" language that the majority emphasizes applies to the conveyance of the land to the Lorenzens, not the easement the Williamses "reserved" for themselves or the easement the Williamses "granted" to the Lorenzens across their land. Our prior case law decides this case. The Court's decision in *King v. Lang*, 136 Idaho 905, 42 P.3d 698 (2002) also involved a deed that granted one easement and reserved another, and only one of these easements included "heirs and assigns" language. *Id.* at 907–08, 42 P.3d at 700–01. The Court held that the deed unambiguously gave the Waggoners an easement in gross that was *not* transferred to their heirs and assigns. *Id.* at 909, 42 P.3d at 702. One reason the Court cited in support of this conclusion was that the Waggoners' easement was granted to them and their immediate family, while the Langs' easement was granted to them and their "heirs and assigns." *Id.*

The majority concludes that *King* is distinguishable on the grounds that the easement at issue here is an easement appurtenant rather than an easement in gross. However, one of the *King* Court's reasons for deciding that the Waggoners' easement was an easement in gross was that it lacked the "heirs and assigns" language attached to the deed's other easement—which is exactly the situation here. Therefore, I would hold that the quitclaim deed unambiguously transferred an easement to the heirs and assigns of the Williamses, but not to the heirs and assigns of the Lorenzens.